(No. 72095.- ▮▮▮▮▮▮▮)

LOIS THACKER, Indiv. and as Adm'r of the Estate of Leslie Thacker, Deceased, Appellee, v. U N R IN-DUSTRIES, INC., *et al.* (Manville Corporation Asbestos Disease Compensation Fund, Appellant).

*Opinion filed September 21, 1992.—Rehearing denied November 30, 1992.*

344

Margaret S. Garvey, of Freeborn & Peters, of Chicago, for appellant.

James Walker, Ltd., of Bloomington, for appellee.

Steven P. Sanders, Raymond R. Fournie and Thomas B. Weaver, of Armstrong, Teasdale, Schlafly & Davis, of St. Louis, Missouri, for *amicus curiae* Owens-Corning Fiberglas Corporation.

Cooney & Conway, of Chicago (Kathy Byrne, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE CLARK delivered the opinion of the court:

On March 1, 1982, plaintiff, Lois Thacker, individually and as administrator of the estate of her deceased husband, brought suit in the circuit court of McLean County against Manville Corporation, Manville International Corporation, and others. Plaintiff sought damages for injuries to her decedent and for his death from cancer which she claimed he contracted while working at the Bloomington plant of Union Asbestos and Rubber Company (UNARCO).

Following a long delay resulting from the bankruptcy of the above-mentioned defendants and other related Manville entities, the Manville Personal Injury Settlement Trust (Trust) was created in the bankruptcy proceedings to assume the liabilities for asbestos-related personal injury claims against the Manville entities. The Trust was substituted as a party defendant for the Manville entities, and the case proceeded to a trial of the claims against the Trust. On August 24, 1989, following a jury trial, the circuit court entered judgment on jury verdicts in favor of plaintiff individually in the sum of $36,471.52 and as administrator in the sum of $244,359.19.

Although other claims in the case were pending at the time, the circuit court subsequently entered an order pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), making the judgments on the plaintiff's verdicts appealable. Appeal was taken by the Manville Corporation Asbestos Disease Compensation Fund, successor to the Trust. For clarity sake we will refer to the Fund as defendant. Initially the appellate court reversed the cir-

cuit court, finding the defendant was entitled to judgment *non obstante veredicto* because plaintiff failed, as a matter of law, to prove asbestos sold by Manville entities was a proximate cause of the injury to, and death of, plaintiff's decedent. Plaintiff thereafter filed a petition for rehearing, which was allowed, and in a unanimous opinion the appellate court affirmed the circuit court, reversing its initial decision. (213 Ill. App. 3d 38.) We granted defendant's leave to appeal (134 Ill. 2d R. 315).

I

Most of the facts are not disputed and have been adequately set out by the appellate court opinion below. We repeat them here with slight modification only.

The decedent worked for UNARCO at its Bloomington plant from 1954 through 1962. All but the last three months of his tenure at the Bloomington plant were spent in the pipe-covering department, with the remainder spent in the plastics department. Testimony indicated that the plant consisted primarily of a large open area with a particularly high ceiling and no interior walls. One witness estimated the size of the facility as being 600 feet in length and 300 feet in width with a 95-foot-high ceiling.

The decedent died December 30, 1981, of lung cancer, but his death was hastened by the presence of asbestosis. He was a nonsmoker. After plaintiff's opening statement, defendant admitted that the decedent had died from exposure to asbestos. Further, defendant stipulated that the Manville entities knew in 1954 that asbestos fibers they were selling had caused asbestosis and cancer in people occupying employment similar to that of the decedent, but that no one from UNARCO or the Manville entities ever advised the employees at the Bloomington plant that breathing asbestos could be hazardous or that the risk of exposure could be reduced by taking

appropriate safety precautions. Despite its admissions, the defendant argued to the jury that there was insufficient evidence to indicate that the decedent had been exposed to Manville asbestos and that nothing Manville did, therefore, could have been a proximate cause of the decedent's injuries.

During the decedent's tenure at the Bloomington plant, shipments of raw asbestos were ordered by UNARCO for use there. Plaintiff introduced evidence tending to show that the plant received at least 25 tons of asbestos from Manville entities in each of the years 1956, 1957 and 1958. Evidence also indicated that between 1950 and 1953, prior to the decedent's tenure at the plant, some 475 tons of raw asbestos had been ordered by the Bloomington plant from Manville entities. According to the plant manager, from 1956 to 1962, the plant received some 200 tons per month of asbestos from another manufacturer.

In a deposition taken before his death, decedent testified that his job included opening bags of asbestos of a kind not supplied by Manville. Moreover, he testified he did not recall seeing bags of asbestos of the type furnished by Manville either at his work station or elsewhere in the plant. The only witness who testified to seeing in the plant any bags of asbestos indicating that they came from Manville was Eugene Hastings. He testified that when Manville asbestos was handled it necessarily gave off dust. Hastings was only able to testify, however, that he saw the defendant's asbestos in the shipping and receiving area of the plant and not at decedent's work station.

The only medical testimony presented to the jury was that of the decedent's treating physician, Dr. Robert A. Conklin. He testified that the decedent was diagnosed as having both asbestosis and lung cancer. He also testified that when asbestos is handled, it releases microscopic fi-

bers which float in the air and which may be inhaled into the lungs. With regard to the lung cancer, Dr. Conklin testified that the decedent's disease may have been caused by any one, or any group, of the fibers inhaled by the decedent. He also testified that the adverse effect of asbestos on the decedent's health was "cumulative."

The plaintiff submitted no evidence as to where the various departments in the UNARCO plant were located, where the decedent took his breaks or lunch, or whether he had any responsibilities away from his primary work sites. Testimony was introduced, however, indicating that asbestos of the same type as that supplied by Manville was used at the plant in various production areas. Also introduced was testimony from several UNARCO employees as to the high level of dust in the plant, and that dust in the plant freely circulated. Various UNARCO employees, including the decedent, testified that dust was continuously visible in the air of the plant when viewed in bright light. No expert testimony was admitted, however, with regard to the tendency of asbestos dust to drift in the air.

At the close of the trial the defendant submitted to the jury a special interrogatory asking, "Do you find that Leslie Thacker was exposed to asbestos fibers supplied by the Johns-Manville Corporations to the plant operated by UNARCO in Bloomington, Illinois, which proximately caused his disease and death?" The jury returned an affirmative answer to the special interrogatory along with its verdict for the plaintiff.

This appeal seeks to raise two distinct issues: (1) whether defendant was entitled to judgment *n.o.v.* because plaintiff failed to produce sufficient evidence of exposure to defendant's asbestos; and (2) whether defendant's tendered jury instructions were improperly rejected by the trial court. Because we find that just the first of

these issues was properly preserved, we address only this question.

## II

Plaintiff initially argues that defendant has waived each of the issues now raised by failing to 'properly preserve them for appeal. She points to the defendant's post-trial motion which simply contradicted the jury's special finding, stating, "Judgment notwithstanding the verdict should be entered for the defendant because the plaintiff failed to introduce sufficient evidence that Mr. Thacker was exposed to asbestos sold or distributed by Johns-Manville, or that any exposure to Johns-Mansville asbestos proximately caused his disease and death."

Plaintiff notes that several of this court's opinions have required a party who wishes to preserve the right to appeal a denial of judgment *n.o.v.*, in opposition to a jury's special finding of fact, to object by *specific* reference at the close of trial or in a post-trial motion to the fact that the jury has made a special finding. (*Taake v. Eichhorst* (1931), 344 Ill. 508, 509; *Brimie v. Belden Manufacturing Co.* (1919), 287 Ill. 11, 16-17.) Although the defendant's post-trial motion argued that the trial judge's denial of its motion for judgment *n.o.v.* was error, plaintiff points out that it failed to indicate that the jury had made a special finding as required by *Taake*.

This court specifically addressed the issue raised by the plaintiff in *Wozniak v. Segal* (1974), 56 Ill. 2d 457, where it was noted that the rule of *Taake*, while binding upon the parties, does not limit the power of a reviewing court to address the substance of the issues raised. As *Wozniak* states, "It is one thing to say, as many opinions of this court and the appellate court have said, that a litigant is 'concluded' or 'conclusively bound' by some action he has taken or failed to take. It is a very different thing to say that a court is barred from reaching a

just result by that action or inaction." (*Wozniak*, 56 Ill. 2d at 460.) *Wozniak* makes clear that Illinois reviewing courts have the power to reach issues such as those presented by the defendant when justice so requires. Although the defendant failed to satisfy the technical rule of *Taake*, it did clearly set out its argument with regard to the sufficiency of evidence in its post-trial motion, and we believe that justice requires us to consider defendant's argument.

With regard to the issue of the rejected jury instructions, however, we note that the defendant failed completely to articulate its position in its post-trial motion. Instead, defendant seeks to raise the issue in a footnote of its petition for leave to appeal. Therefore, this issue is waived and will not be addressed. *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348; 134 Ill. 2d R. 366(b)(2)(iii).

Finally, the defendant has submitted a motion seeking to strike certain portions of plaintiff's brief, arguing that these portions contain improper arguments based on matters not developed in the trial record. Because we do not rely in any way upon the arguments advanced in these sections of the plaintiff's brief, this motion is now moot and need not be considered.

### III

A motion for directed verdict or judgment *n.o.v.* will not be sustained unless all of the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 405, quoting *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) On review of a trial judge's decision to deny a motion for a directed verdict or a judgment *n.o.v.*, all of the evidence must be reviewed in a light most favorable

to the opponent of the motion. *Schmidt,* 44 Ill. 2d at 405.

As is the general rule in civil cases, the plaintiff has the burden of producing evidence sufficient to establish each element of his or her claim. This "burden of production" is met with regard to a given element of proof when there is some evidence which, when viewed most favorably to the plaintiff's position, would allow a reasonable trier of fact to conclude the element to be proven. (*Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113.) While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient. (*Smith v. Eli Lilly & Co.* (1990), 137 Ill. 2d 222, 232; *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 38.) If the plaintiff fails to meet the burden of production with regard to a necessary element of the case, courts rightfully grant directed verdicts or enter judgment *n.o.v. Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.

A necessary element of proof in the present case is that the defendant's asbestos was a "cause" of the decedent's injuries. In negligence actions, as well as in strict liability cases such as this one, causation requires proof of both "cause in fact" and "legal cause." (*Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, *aff'd in part & rev'd in part* (1979), 76 Ill. 2d 154; J. Lee & B. Lindahl, Modern Tort Law §4.02 (1988).) At issue here is whether the plaintiff has met her burden of proving "cause in fact."

There are generally two tests used by courts when considering cause in fact. Under the traditional "but for" test, a defendant's conduct is not a cause of an event if the event would have occurred without it. Under the "substantial factor" test, which has been adopted by the Restatement (Second) of Torts, the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event

about. (*Turner v. Roesner* (1990), 193 Ill. App. 3d 482, 490; *Kerns*, 54 Ill. App. 3d 323, *aff'd in part & rev'd in part* (1979), 76 Ill. 2d 154; Restatement (Second) of Torts §431 (1965).) Plaintiff in the present case sought to prove causation through the substantial factor test.

The substantial factor test requires that the alleged tortfeasor's conduct be somehow "responsible" for producing the injury at issue. (See Restatement (Second) of Torts §431, Comment *a* (1965).) The question of whether an alleged tortfeasor's conduct meets this test is usually a question for the trier of fact, but if a contrary decision is clearly evident from a review of all the evidence, Illinois courts rule in favor of the defendant as a matter of law. (*Fischer v. Crippen* (1986), 144 Ill. App. 3d 239, 244; *Kerns*, 54 Ill. App. 3d at 334; see also Restatement (Second) of Torts §434 (1965).) Put in a slightly different way, Illinois courts have, as a matter of law, refused to allow a plaintiff to take the causation question to the jury when there is insufficient evidence for the jury to reasonably find that the defendant's conduct was a cause of the plaintiff's harm or injury.

The defendant argues that the plaintiff has failed to meet her burden of production and points to the relatively small amount of asbestos supplied by Manville to UNARCO's Bloomington plant during the decedent's tenure there, particularly in relation to the quantity of asbestos supplied to the plant from other sources. In addition, the defendant stresses the fact that the decedent himself testified that he did not work with Manville asbestos. In light of these facts, defendant argues that the trial court should not have submitted the causation question to the jury and that the jury could not have reasonably reached its conclusion without improperly speculating as to the cause of the decedent's injuries. In response, the plaintiff maintains that she has met her burden by submitting evidence showing that Manville asbestos cir-

culated in the air of the plant and became part of the visible dust which the decedent necessarily inhaled. In light of the fact that plaintiff's medical testimony indicated that only slight exposure could cause the decedent's cancer, and would contribute to his asbestosis, plaintiff argues that the jury was justified in reaching its result.

## IV

Courts throughout the country, including courts in Illinois, have struggled with how a plaintiff in an asbestos case can fairly meet the burden of production with regard to causation. Several factors complicate the analysis, most of which were described by Dr. Conklin's testimony. First, because asbestos fibers are friable and may float in the air, it is possible that even those who do not come into direct physical contact with asbestos products may suffer from asbestos poisoning. Second, due to the microscopic size of asbestos fibers, asbestos cannot always be seen drifting in the air or entering a plaintiff's body. The small size of these fibers also means that asbestos fibers from different sources are generally indistinguishable from one another, even when removed from a plaintiff's body and examined through a microscope. Third, asbestos injury takes an extended time period to manifest itself. Evidence presented to the jury showed that the time between when asbestos fibers are first inhaled and when scarring in the lungs becomes symptomatic is commonly between 25 and 30 years. This means that a plaintiff injured by asbestos fibers often does not know exactly when or where he was injured and therefore is unable to describe the details of how such injury occurred. In addition, we note that even when a plaintiff is able to narrow the circumstances of exposure to a single event or circumstance, the extended passage of time between exposure and illness often means that witnesses

are no longer readily available or that the memories of those who are available have become unreliable.

As we have noted, proof may be made by either direct or circumstantial evidence. Circumstantial proof is "the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to *** common experience." (*Devine v. Delano* (1916), 272 Ill. 166, 179-80.) Due to the unique problems posed by asbestos injury, plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation. A brief review of several cases from other jurisdictions is helpful.

In *Blackston v. Shook & Fletcher Insulation Co.* (11th Cir. 1985), 764 F.2d 1480, the Eleventh Circuit Court of Appeals, applying Georgia substantive law, required a worker who claimed to have been poisoned by asbestos to produce evidence showing that he worked with, or in close proximity to, the defendant's asbestos products before allowing the plaintiff to take his case to a jury. Over a period of two years the plaintiff worked at a site at which he alleged that "Armaspray," a product containing asbestos and manufactured by the defendant, was used by employees in the course of installing insulation. Although the plaintiff produced testimony from two of the employees in which they stated that they used Armaspray at the site during the times at issue and in proximity to other workers such as the plaintiff, these employees could not specifically recall the plaintiff's being at the site. In addition, the plaintiff admitted that he could not remember the defendant's products or the fact that Armaspray was ever used near him. The court held that (1) the plaintiff failed to establish a genuine issue as to whether he was exposed to asbestos-containing products manufactured by the defendant; and (2) the plaintiff was not entitled to a presumption of exposure by simply

showing that the defendant's asbestos-containing products were used at the jobsite at the same time that the plaintiff was employed there.

The same court reached a different outcome, however, in *Odum v. Celotex Corp.* (11th Cir. 1985), 764 F.2d 1486, a case decided on the same day as *Blackston.* In *Odum* the decedent, Bennie Lee Odum, was a pipefitter and insulator who had worked at a Naval Air Station at various times between 1959 and 1961. A co-worker, Baker, testified that he remembered working around a man named "Bennie" who he thought was the same man as the decedent. Baker specifically recalled the use of the defendant's asbestos-containing products at the site. Significantly, the court noted that Baker testified that during one two-day period, Bennie and he worked inside the same room where the defendant's products were used and that Bennie could have been exposed to dust generated therefrom. Although the co-worker was not sure whether the products used those days contained asbestos, the Eleventh Circuit court ruled that a sufficient question of exposure existed for the jury to decide the question of causation.

The Court of Appeals for the Fourth Circuit refined the causation analysis in *Lohrmann v. Pittsburgh Corning Corp.* (4th Cir. 1986), 782 F.2d 1156. The *Lohrmann* court specifically rejected the plaintiff's invitation to fashion a rule by which a jury question would be created whenever there is any evidence that a defendant's asbestos-containing product was used at a workplace at the same time the plaintiff worked there. Instead, the court fashioned the rule, at least when "dealing with a workplace as large as a shipyard," that the question of when there is sufficient evidence to take the case to the jury depends upon "the frequency of the use of the product and the regularity or extent of the plaintiff's employment in proximity thereto." The court characterized this

rule as a *"de minimus"* rule, since "a plaintiff must prove more than a casual or minimum contact with the product." *Lohrmann,* 782 F.2d at 1162.

In addition to the cases discussed above, the defendant cites extensive case law from other jurisdictions which have adopted the principles applied in *Lohrmann.* (See, *e.g., Robertson v. Allied Signal, Inc.* (3d Cir. 1990), 914 F.2d 360, 375, quoting *Eckenrod v. Gaf Corp.* (1988), 375 Pa. Super. 187, 192, 544 A.2d 50, 53 (Pennsylvania law requires evidence demonstrating "frequent use of the product and 'the regularity of plaintiff's employment in proximity thereto' "); *Menne v. Celotex Corp.* (10th Cir. 1988), 861 F.2d 1453 (applying Nebraska law and holding that a plaintiff must establish a likelihood of frequent or sustained exposure to asbestos dust from the products of each defendant to prove proximate cause); *O'Connor v. Raymark Industries, Inc.* (1988), 401 Mass. 586, 588, 518 N.E.2d 510, 511 (approving jury instruction that proof of causation requires "evidence of some exposure *** on a regular basis over some period of time where [the plaintiff] was actually working").) Each of these opinions focuses on the ability of the plaintiff to show that the injured worker was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product. These requirements attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork). (*Sholtis v. American Cyanamid Co.* (1989), 238 N.J. Super. 8, 29, 568 A.2d 1196, 1207.) The defendant has referred to this approach as the "frequency, regularity and proximity" test, and we adopt this test as the rule of law in Illinois.

In the present case the evidence showed that plaintiff worked in the UNARCO plant for more than eight years and that at least 75 tons of defendant's *raw* asbestos was processed at the plant during this time. The defendant notes in its brief that even under the most generous calculation, a maximum of just 3% of the total dust in the plant could have been generated from Manville asbestos and that the actual dust at the decedent's work site was, in all likelihood, significantly less. In light of plaintiff's medical evidence which indicated that even slight exposure would adversely affect the decedent's health, however, and in light of the total volume of asbestos at the UNARCO facility, we cannot say that 3% is insignificant as a matter of law. (*Cf. Sholtis v. American Cyanamid Co.* (1989), 238 N.J. Super. 8, 25-26, 568 A.2d 1196, 1205 (finding that several parties collectively responsible for 5% to 10% of airborne asbestos could each be held liable).) To the contrary, we believe that the evidence developed at trial as to the amount of Manville asbestos likely to have been used at the facility, the nature of the work performed there and the extended period of time the decedent worked within the plant are sufficient for us to conclude that there was frequent use of Manville asbestos at the Bloomington facility where the decedent regularly worked. The question therefore becomes whether the plaintiff has produced sufficient evidence as to whether this asbestos was used "in proximity" to where the decedent worked.

The Court of Appeals for the Third Circuit addressed the significance of "fiber drift" evidence in *Robertson v. Allied Signal, Inc.* (3d Cir. 1990), 914 F.2d 360, and held that such evidence could be used to meet the "proximity" prong of the frequency, regularity and proximity analysis. In *Robertson*, the court was presented with the question of whether Pennsylvania substantive law would allow plaintiffs who worked in a large, open, indoor facil-

ity to argue that so much asbestos was released into the air of the plant that all who worked within the facility were exposed to asbestos in sufficient quantities to allow such workers to argue causation as to all asbestos defendants to a jury. The plaintiff sought to demonstrate this exposure through the testimony of various experts who were to testify as to the tendency of asbestos fibers to disperse and move with air currents. In deciding to grant summary judgment in favor of the defendants, the district court refused to consider plaintiffs' expert testimony because it believed that this testimony was not relevant to the frequency, regularity and proximity analysis. An initial issue on appeal, therefore, was whether the expert testimony had been wrongfully excluded. In resolving the issue, the court concluded that such expert testimony should have been considered by the trial judge along with the plaintiffs' other evidence before granting summary judgment. However, the court found that only those plaintiffs who were able to show product exposure at specific work sites were able to meet the "frequency, regularity and proximity" test, apparently because of the lack of evidence regarding the quantity of asbestos likely to have been inhaled by the other plaintiffs. See *Robertson*, 914 F.2d at 378 (noting that "no witness was able to say how much of the product was used and how many times it was used in a given area").

A more liberal approach to fiber drift evidence was taken by the Washington Supreme Court in *Lockwood v. A C & S, Inc.* (1987), 109 Wash. 2d 235, 744 P.2d 605. Lockwood specifically claimed that he was exposed to asbestos from working in areas where asbestos insulation had recently been installed, from falling insulation from overhead pipes and from the proximity of his eating area at work to a compartment where raw asbestos was stored. At trial, evidence was presented relating to which manufacturers' products were

used generally at the shipyard and on board several of the ships where Lockwood had worked. In holding that Lockwood's case was sufficient to take the question of causation to the jury, the Washington court emphasized six important considerations relevant to its analysis: (1) the evidence of the plaintiff's proximity to the asbestos product when the exposure occurred, (2) the expanse of the work site where fibers were released, (3) the extent of time that the plaintiff was exposed to the product, (4) the form and type of asbestos products to which the plaintiff was exposed, (5) the ways in which such products were handled and used and (6) the evidence presented as to medical causation of the plaintiff's particular disease. Based upon a combination of these factors, the *Lockwood* court found that the plaintiff had presented sufficient evidence to take the causation question to the jury despite the lack of specific evidence as to where and when the plaintiff was exposed to the defendant's asbestos product.

Our appellate court recently addressed the question of causation in asbestos cases and the significance of "fiber drift" evidence in *Wehmeier v. U N R Industries, Inc.* (1991), 213 Ill. App. 3d 6. The plaintiffs in *Wehmeier* alleged that they or their decedents were exposed to Manville asbestos in the UNARCO Bloomington plant (the same facility at issue here) and that this asbestos was a substantial factor in bringing about asbestos-related disease. The appellate court, in analyzing the plaintiffs' claims, noted that several Illinois decisions have required a plaintiff in an asbestos case to produce evidence of exposure to "a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." (Emphasis omitted.) (*Wehmeier,* 213 Ill. App. 3d at 28, citing *Naden v. Celotex Corp.* (1989), 190 Ill. App. 3d 410; *Estate of Henderson v. W.R. Grace Co.* (1989),

185 Ill. App. 3d 523; *Zimmer v. Celotex Corp.* (1989), 192 Ill. App. 3d 1088.) Again, this is the "frequency, regularity and proximity" rule developed from the *Blackston* line of cases. Although the plaintiffs in *Wehmeier* were unable to prove that they worked in proximity to where Manville asbestos was being processed, they pointed out that, due to the way in which raw asbestos was used in the Bloomington facility, Manville asbestos became part of the ambient dust which all workers in the plant inhaled. The *Wehmeier* decision held that evidence of both regularity of use and proximity were prerequisites to allowing a plaintiff to take the causation question to the jury in Illinois but that "fiber drift" evidence could be used to meet the proximity requirement of the test. The court noted that the use of fiber drift evidence in this way "relates only to proximity and does not establish how often a particular product was used or how often a worker was present in an area where fibers may have drifted." *Wehmeier,* 213 Ill. App. 3d at 30, citing *Robertson,* 914 F.2d at 383.

The appellate court opinion in the present case relied almost entirely upon *Wehmeier*'s statement of the law. Therefore, it is the appellate court's application of the *Wehmeier* frequency, regularity and proximity analysis to the facts of this case, and its use of fiber drift evidence, which we must now consider.

## V

The trial court below distinguished the cases applying the frequency, regularity and proximity rule on the basis of the fact that those cases dealt with processed asbestos products and not with the type of potent, raw asbestos at issue here. The appellate court applied the frequency, regularity and proximity test, but applied the test liberally in light of the plaintiff's medical evi-

dence which tended to show that only slight exposure could have caused the plaintiff's injury. It held that although evidence of "fiber drift" was insufficient, in and of itself, to meet the plaintiff's burden of production, such evidence could be combined with other relevant facts so as to meet this burden, and that the plaintiff had successfully done so. 213 Ill. App. 3d at 41.

As we have stated, we agree with the appellate court that in order for the plaintiff to prevail on the causation issue there must be some evidence that the defendant's asbestos was put to "frequent" use in the Bloomington facility in "proximity" to where the decedent "regularly" worked. While we agree that evidence of fiber drift, the expanse of the plaintiff's workplace, the extent of time the plaintiff was exposed, the type of asbestos used, the way in which it was used and medical evidence relating to the plaintiff's specific injuries are all relevant to the proximate cause analysis, the plaintiff here cannot meet her burden of production unless and until she is able to point to sufficient evidence tending to show that Manville asbestos was actually inhaled by the decedent. It is only when this is shown, under the facts of this case, that we believe the jury's verdict can be supported. Again, "proximity" becomes the controlling issue.

We agree with the appellate court that even though the plaintiff offered no evidence of where in the plant Manville asbestos was processed, the fact that Manville asbestos, once inside the plant, necessarily contributed to the dust in the plant air was sufficient to meet the proximity requirement, particularly in light of (1) the friable and potent nature of the *raw* asbestos Manville shipped to the plant and (2) testimony, albeit slight, indicating that Manville asbestos necessarily generated dust which became part of dust which circulated

throughout the facility. In effect the appellate court held that, under the facts presented, the decedent regularly worked in dangerous proximity to dust generated from Manville's asbestos even if it is assumed that Manville's asbestos was initially processed in areas of the plant removed from where the plaintiff worked and that the jury could thereby reasonably infer causation. We agree with this conclusion.

The defendant makes much of the fact that even if fiber drift evidence may be used to meet the proximity prong of the frequency, regularity and proximity test, such evidence by necessity must be presented through expert testimony. Indeed, *Wehmeier* itself indicates that "reliable expert evidence of fiber drift may be used to establish the proximity prong of the [frequency, regularity and proximity] test." (*Wehmeier,* 213 Ill. App. 3d at 31.) Instead of offering such evidence, the defendant argues that the plaintiff "merely" presented evidence that Manville dust contributed to the visible dust in the facility which drifted through the plant.

The "rule of necessity," which held expert testimony to be inadmissible unless necessary to the jury's understanding of a disputed fact, has been abolished in Illinois in favor of a more lenient rule. Expert testimony is now properly admitted whenever it will assist the trier of fact to understand the evidence or to determine a fact in issue. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118.) Even in matters within the common knowledge and experience of jurors, expert testimony is admissible where helpful to comprehension or explanation. However, expert opinions on matters of common knowledge are not admissible unless the subject is difficult of comprehension or explanation. *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99.

We decline to hold that fiber drift evidence may only be admitted through expert testimony or that expert testimony is a precondition for proving asbestos exposure in a case such as this. *Robertson, Lockwood* and *Wehmeier* correctly hold that expert testimony on the issue of fiber drift is admissible in asbestos cases in order to assist the court or jury in its determination on the causation issue, not that such testimony is admissible because it is "necessary" to prove causation. Expert testimony is usually important because the mechanics of how asbestos travels from its source to an injured worker is difficult to demonstrate and cannot usually be witnessed. In this case, however, there were numerous witnesses who were able to describe the mechanics of asbestos movement because they were able to see the "haze" of asbestos which existed "throughout" the plant. Although expert testimony would certainly have aided the jury in better understanding how asbestos is able to remain suspended in the air and travel, we do not believe it was necessarily beyond the ability of the jurors to weigh the evidence presented here and, in combination with their own experiences, conclude that visible indoor dust is likely to travel significant distances from its source, eventually being inhaled by those who come into contact with it.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*