**Raymond ROSEN, Plaintiff,**

v.

**CIBA–GEIGY CORPORATION,
Defendant.**

**No. 94 C 4039.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 4, 1995.

David J. Letvin, Letvin & Stein, Chicago, IL, for plaintiff.

Anne Giddings Kimball, Martha D. Owens, and Kevin B. Reid, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff Raymond Rosen ("Rosen") has filed a complaint against defendant Ciba–Geigy Corporation ("Ciba–Geigy"), wherein plaintiff alleges that Ciba–Geigy's negligent marketing, development, sale, and distribution of the Habitrol patch used by Rosen caused his June 11, 1992, heart attack. Plaintiff alleges Ciba–Geigy was negligent in that it:

(a) failed to fully inform physicians and/or patients of the nature and extent of the operation of the Habitrol patch on the system of the patient;

(b) failed to provide sufficient instruction and warning in form and content comprehensible to layman patients as to the potential consequences of use of Habitrol;

(c) failed to conduct sufficient investigation and testing to become aware of the consequences of smoking cigarettes while using the Habitrol patch;

(d) and was otherwise negligent in developing, promoting, marketing, and selling the Habitrol patch.

(Plaintiff's Complaint, ¶ 13.) Defendant has since filed a motion for summary judgment which the court now decides.

## I. FACTS

Ciba–Geigy is the manufacturer of the Habitrol patch system, a transdermal nicotine system designed to help smokers quit smoking. (Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Defendant's 12(M) Statement") at 2.) This patch releases nicotine through the skin into the bloodstream, replacing some of the nicotine smokers may crave while attempting to quit smoking. (Defendant's 12(M) Statement at 2.)

Rosen was a smoker for 49 years prior to his use of the Habitrol patch. (Plaintiff's Response to Defendant's Statement of Facts to Which it Believes There is No Dispute ("Plaintiff's 12(N) Statement") at 1.) In 1987, Rosen had a heart attack and subsequently had quadruple bypass surgery. (Defendant's 12(M) Statement at 3.) Rosen was then advised to quit smoking. (Defendant's 12(M) Statement at 3.) However, he did not. (Defendant's 12(M) at 4.) In 1990, Rosen's doctor prescribed nicotine gum to help Rosen quit smoking, but his use of the gum was unsuccessful. (Defendant's 12(M) Statement at 4.) About two years later, he requested that his doctor prescribe a nicotine patch to help him stop smoking. (Defendant's 12(M) Statement at 4.) He wore a sample patch for one day and reported a lack of side effects to his doctor. (Defendant's 12(M) Statement at 5.) His doctor then prescribed the patch to him. (Defendant's 12(M) Statement at 5.) The patient instructions stated that one should not smoke while wearing the patch. (Defendant's 12(M) Statement at 5.) Rosen read these instructions and knew he should not smoke. (Defendant's 12(M) Statement at 5.) On June 11, 1992, while still wearing the patch he had placed on his arm twenty-four hours earlier, Rosen smoked two cigarettes. (Defendant's 12(M) Statement at 5–6.) Rosen then took a bath and removed his patch. (Defendant's 12(M) Statement at 6.) Upon removing the patch, he experienced a sensation that went down his arm. (Plaintiff's 12(N) Statement at 5.) Later that day, he was diagnosed as having a non–Q wave myocardial infarct. (Plaintiff's 12(N) Statement at 6.) After this heart attack, he continued to smoke and has since had an additional heart attack. (Defendant's 12(M) Statement at 6–7.)

## II. STANDARD OF REVIEW

■ Summary judgment is proper "if the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When reviewing the record on summary judgment, this court must draw all reasonable inferences in the light most favorable to the non-movant. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400 (7th Cir.1992). To avert summary judgment, however, plaintiff must do more than raise "'some metaphysical doubt as to the material facts.'" *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). Instead, he must present specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### III. *DISCUSSION*

In order to prevail in a negligence action under Illinois law, the plaintiff must prove that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the defendant's breach proximately caused the plaintiff to incur injuries. *Espinoza v. Elgin, Joliet and Eastern Ry. Co.,* 165 Ill.2d 107, 208 Ill.Dec. 662, 665, 649 N.E.2d 1323, 1326 (1995) (citations omitted). Normally, causation is a factual issue for the jury to decide. *Collins v. American Optometric Ass'n,* 693 F.2d 636, 640 (7th Cir.1982); *Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 177 Ill.Dec. 379, 385, 603 N.E.2d 449, 455 (1992). However, where a review of all the evidence permits only one reasonable conclusion on the issue of cause, the trial court may render judgment as a matter of law. *Id.* Rosen has failed to create any issue of material fact that the Habitrol patches he used *caused* his June 11, 1992, heart attack as is required in a negligence action. Therefore, because no reason-

able jury could find that Ciba–Geigy was negligent, Ciba–Geigy is entitled to judgment as a matter of law.

In Illinois, proximate cause encompasses both the concepts of causation in fact and legal causation. *Tragarz v. Keene Corp.,* 980 F.2d 411, 423 (7th Cir.1992). When considering causation in fact, courts apply the "substantial factor" test. *Thacker,* 177 Ill. Dec. at 385, 603 N.E.2d at 455. Under this test, which has been adopted by the *Restatement (Second) of Torts,* the Habitrol patch caused the injury if it was a material element and a substantial factor in bringing about the heart attack. *Id.* (citations omitted); RESTATEMENT (SECOND) OF TORTS § 431 (1965). In determining whether the nicotine patch was a substantial factor in bringing about the heart attack, it is important to look at "the number of other factors which contribute[d] in producing the harm and the extent of the effect which they [had] in producing it." RESTATEMENT (SECOND) OF TORTS § 433(a) (1965). The comment to this section of the Restatement notes that "[s]ome other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor." RESTATEMENT (SECOND) OF TORTS § 433 cmt. d (1965).

Plaintiff's evidence of causation in this case consists of the testimony of Dr. Fozzard, a cardiologist and plaintiff's sole liability expert. (Defendant's 12(M) Statement at 8.) Dr. Fozzard testified at his deposition that Rosen's preexisting coronary artery disease was the dominant factor in causing his heart attack. (Deposition of Dr. Harry A. Fozzard ("Fozzard Deposition"), p. 69.) He further stated in answer to one of the concluding questions of the deposition:

I would say within a reasonable degree of medical certainty the probability is that the heart attack would have occurred, would have occurred whether he was using the Habitrol patch or not and whether he was smoking or not to about I would guess a 95 percent certainty. The issue we are discussing is whether the other circum-

stances contributed to the other five percent.

(Fozzard Deposition at 89; Defendant's 12(M) Statement at 10; Plaintiff's 12(N) Statement at 12.) When Dr. Fozzard spoke of other circumstances, he was referring at least in part to Rosen's use of the patch and his continued smoking. (Plaintiff's 12(N) Statement at 12.)

Dr. Fozzard's testimony, if anything, establishes that the Habitrol patch was not a substantial factor in causing the heart attack. His testimony that Rosen's preexisting coronary artery disease was the dominant factor in causing the attack and that the heart attack would have occurred regardless of his use of the patch to a 95 percent certainty supports a conclusion that his use of the patch was not a substantial factor in causing his heart attack. This case is comparable to the one contemplated by comment d in § 433 of the Restatement. His preexisting coronary artery disease had such a predominant effect in bringing about his heart attack as to make the effect of the patch insignificant and to prevent it from being a substantial factor.

In his memorandum in opposition to defendant's motion for summary judgment, Rosen also argues that Dr. Car and Dr. Tanenbaum, defense witnesses and plaintiff's treating physicians, bolster his contention that the patch caused the heart attack. However, neither doctor came to this conclusion at his deposition. Dr. Car stated that "the use of the patch on Mr. Rosen did not cause [the heart attack]" and that the heart attack "probably would have occurred" regardless of whether Rosen was using the nicotine patch. (Deposition of Dr. Joseph Car, pp. 64, 82–3.) Dr. Tanenbaum stated that he could not say whether Rosen's use of the patch caused the heart attack. (Deposition of Dr. Seth Tanenbaum, p. 32.)

Since plaintiff has not set forth any evidence to support a conclusion that Rosen's use of the Habitrol patch caused the heart attack, he cannot prove Ciba–Geigy was negligent. Summary judgment, therefore, is properly granted for the defendant since there is no genuine issue of material fact for the jury to decide.

Furthermore, this court also notes that Dr. Fozzard's expert testimony would not be admissible at trial and therefore could not be a basis for a denial of the motion for summary judgment. *See Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607 (7th Cir.1993) (noting that an expert's opinion must be admissible to be considered in the determination of a motion for summary judgment). An expert may give his opinion if it is based on scientific knowledge that will assist the trier of fact. FED.R.EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, — U.S. —, —, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). Scientific knowledge has a grounding in the methods and procedures of science and is more than subjective belief or unsupported speculation. *Daubert*, — U.S. at —, 113 S.Ct. at 2795; *Porter*, 9 F.3d at 614. The Supreme Court has formulated four factors to determine if an expert's testimony is scientific knowledge that will assist the trier of fact: (1) whether the theory can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error of the technique; and (4) the general acceptance in the scientific community. *Daubert*, — U.S. at — – —, 113 S.Ct. at 2796–97.

Dr. Fozzard admitted in his deposition that he cannot state within a reasonable degree of medical certainty that use of a nicotine patch caused the plaintiff's heart attack. (Fozzard Deposition at 46.) He also conceded that he does not know of any study which specifically found that nicotine or nicotine patches cause coronary artery disease, except for a study done on dogs which could not be performed on humans. (Fozzard Deposition at 61–63); *see Schmaltz v. Norfolk & Western Ry. Co.*, 878 F.Supp. 1119, 1122 (N.D.Ill.1995) (expert's finding based on study which concluded that herbicides caused eye irritation in rabbits was not admissible under *Daubert* to show that herbicides caused respiratory problems in humans). Further, he admitted that he was only making a guess. (Fozzard Deposition at 64.) He then clarified by saying that the main source for his opinion was an inference from the fact that the patch resembles smoking and from Ciba–Geigy's warning that the patch should not be used by

people with cardiac disease. (Fozzard Deposition at 62–64.)

Dr. Fozzard's opinion that the nicotine patch caused the heart attack has not been tested and is purely his own speculation. His testimony is not the type of scientific knowledge the Supreme Court contemplated in *Daubert* and would be inadmissible at trial. Consequently, the plaintiff could not use Fozzard's testimony that in his opinion the patch was a contributory cause of the heart attack. Therefore, because plaintiff cannot prove causation, summary judgment for the defendant is appropriate. *See O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1107 (7th Cir.1994) (holding that since plaintiff's expert's testimony on causation was inadmissible and thus plaintiff could not prove causation, summary judgment was properly granted for the defendant).

After a careful review of the parties' submissions, this court concludes that no genuine issue of material fact exists that must be resolved at trial.

### IV. CONCLUSION

Defendant's motion for summary judgment is granted.