NO. 3-96-0039

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

VENETTA KAY JOHNSON,                  )  Appeal from the Circuit Court 

Individually and as Special      )  of the 10th Judicial Circuit,

Administrator of the Estate      )  Peoria County, Illinois

of Charles E. Johnson,           )

Deceased                         )

                                 )

     Plaintiff-Appellant,        )

     Cross-Appellee,             )

                                 )

     v.                          )  No. 93-L-544   

                                 )

OWENS-CORNING FIBERGLASS         )

CORPORATION, et al.,             )

                                 )

     Defendants,                 )

     and                         )

                                 )  

E.D.BULLARD COMPANY, et al.,          )

                                 )  Honorable

     Defendants-Appellees,       )  John A. Barra,

     Cross-Appellants.           )  Judge Presiding

                                                                  

                                     

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

                                                                  

     

     Venetta Johnson, individually and as Special Administrator of

the Estate of Charles Johnson, filed a multi-count complaint

against numerous defendants asserting that Charles had contracted

lung cancer from exposure to their asbestos-containing products. 

The trial court granted summary judgment to all defendants on the

question of whether Charles' death was caused by exposure to

asbestos.  We hold that summary judgment was improper on the issue

of medical causation because expert opinions based on hypothetical

questions in combination with the testimony of co-employees gave

rise to a triable question of fact.  We also hold that the Lohrmann

"frequency, regularity and proximity" test for asbestos product

exposure applies at the summary judgment stage.  Additionally we

hold that summary judgment was improper as to defendants A.P. Green

and Sager Glove Company because a triable question remained as to

whether their products caused or contributed to Charles' lung

cancer.  We thus affirm in part, reverse in part and remand.     

                                BACKGROUND

     Charles Johnson worked in the wire mill at Keystone Steel &

Wire Company in Bartonville, Illinois almost continuously from 1955

until 1991, when he was diagnosed with lung cancer.  He died on

October 10 of that year.  During the years preceding his death,

Charles regularly smoked cigarettes.  

     The parties generated a substantial amount of discovery. 

Doctors Jeremiah Crabb, Daniel Parr and Revathi Swaminathan were

among the physicians deposed in anticipation of trial.  Dr. Parr

was Charles' family physician.  He testified that, assuming Charles

had habitually smoked cigarettes and was occupationally exposed to

asbestos, both factors would be implicated as causes of Charles'

lung cancer.  Dr. Jeremiah Crabb, a pulmonologist, testified that

in his opinion, assuming there had been occupational exposure in

addition to cigarette usage, both factors could be implicated as

"co-carcinogens."  Dr. Revathi Swaminathan, an oncologist,

testified in her deposition that she had insufficient factual data

to state with a reasonable degree of medical certainty whether

asbestos played any role in causing Charles' cancer.  However, Dr.

Swaminathan also stated that, assuming that there was exposure to

asbestos, such exposure would be a contributing factor in causing

Charles' lung cancer.  In addition,  Dr. Swaminathan signed an

affidavit which was attached to plaintiff's response to defendants'

motions for summary judgment.  Therein Dr. Swaminathan stated that,

in her opinion, occupational exposure to asbestos was a cause of

Charles' lung cancer and lung cancer was the cause of his death.

     In addition to testimony from physicians, the parties deposed

several of Charles' co-employees from the Keystone plant.  The

employees testified about the various products used in the plant,

and some employees testified as to when and where products were

used with relation to Charles.  

     Because the facts in this case are involved and complex, we

will make references to specific parties and any additional

relevant facts in the appropriate portion of the discussion below. 

We note, however, as the parties have pointed out, that the trial

court made an error in its order when it stated that Charles worked

in the steel mill.  We acknowledge the error and review this case

de novo knowing that Charles was employed in the wire mill. 

     Most of the defendants moved for summary judgment following

discovery, arguing that no material issue of fact existed

concerning medical causation.  The defendants asserted that

plaintiff could not put forth evidence demonstrating that Charles'

death resulted from exposure to asbestos products rather than his

smoking habits.  Additionally, certain defendants moved for summary

judgment on the basis that no issue of material fact existed

concerning whether Charles had been exposed to their products.  On

December 8, 1995, the trial court entered an order granting summary

judgment to all defendants.  The court concluded that the evidence

was insufficient to maintain an action for an injury caused by

exposure to asbestos dust.  Furthermore, the court granted several

defendants summary judgment on the additional basis of insufficient

evidence of product exposure.  The plaintiff appeals the court's

order granting summary judgment and defendant E.D. Bullard cross-

appeals the trial court's decision not to award it summary judgment

on the issue of successor liability as well as medical causation.

                             SUMMARY JUDGMENT

     It cannot be said too often that summary judgment is a remedy

which should be granted with caution.  It should only be granted

when the pleadings, depositions, admissions and affidavits show

that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law. 735 ILCS 5/2-

1005(c) (West 1994); Carruthers v. B.C. Christopher & Co., 57 Ill.

2d 376, 313 N.E.2d 457 (1974).    This Court's review of an order

granting summary judgment is de novo.  Andrews v. Cramer, 256 Ill.

App. 3d 766, 629 N.E.2d 133 (1993).

                                 CAUSATION

     In an asbestos case based upon negligence or strict products

liability, it is essential that plaintiff prove that the

defendant's asbestos was the "cause-in-fact" of the injury. 

Causation evidence may be direct or circumstantial; the latter type

must justify an inference of probability rather than possibility. 

Naden v. Celotex Corp., 190 Ill. App. 3d 410, 546 N.E.2d 766

(1989).  However, the plaintiff has two burdens with respect to

causation-in-fact.  First, the plaintiff must prove medical

causation -- that asbestos was a cause of the injury.  Second,

plaintiff must show that the defendants' asbestos was a cause of

the decedent's injuries.  Thacker v. UNR Industries, 151 Ill. 2d

343, 603 N.E.2d 449 (1992).  In this case, both of the plaintiff's

burdens are at issue.      

     1.  Medical Causation

     We are first concerned with whether there is sufficient

evidence in the record for the plaintiff to meet her burden of

proving that asbestos exposure caused or contributed to Charles'

lung cancer.  The defendants contend that the record demonstrates

that the ultimate cause of death was Charles' smoking habit, not

any exposure to asbestos, and that no evidence was put forth to

suggest Charles died from exposure to asbestos.  We disagree.  

     Several physicians testified on behalf of the plaintiff.  Dr.

Parr and Dr. Crabb testified that, assuming Charles was

occupationally exposed to asbestos, such exposure would be

"implicated" as a cause of the cancer.  Additionally, Dr.

Swaminathan provided an affidavit in which she concluded, based on

information given to her, that if Charles was occupationally

exposed to asbestos, the exposure would be a cause of Charles' lung

cancer.  Defendants argue that Swaminathan's affidavit should not

be given any weight because it conflicts with her deposition

testimony.  Here the defendants rely on Vesey v. Chicago Housing

Authority, 145 Ill. 2d 404, 583 N.E.2d 538 (1991) (nonmovant cannot

use an affidavit to contradict prior deposition testimony to place

material facts in issue).  However, the statement in her deposition

that she retained her affidavit opinion prevents Vesey's

application in this instance.

     Additionally, several Keystone employees who worked in the

wire mill during the periods Charles worked there testified that

asbestos products were being used.  For example, William

Hendershott testified that asbestos gloves and asbestos-containing

foil were used, as well as a product called Therm-O-Flake.  James

Todd testified that asbestos gloves were used.  Donald Fessner

testified that asbestos pipe insulation was used.  James Murphy

testified that a substantial number of asbestos-containing products

were used at the Keystone plant.  

     The testimony of the three physicians presented evidence that,

if there were occupational exposure, a jury could conclude that it

played a part in causing the lung cancer.  Now it is true that 

this  testimony, standing alone, would not be sufficient to avoid

summary judgment.  See Joiner v. General Electric Co., 864 F. Supp.

1310 (N.D. GA. 1994) (expert opinion of cause of plaintiff's lung

cancer barred because expert made unfounded assumption that

plaintiff was exposed to certain carcinogenic materials).  However,

when viewed in conjunction with the employees' testimony regarding

Charles' occupational exposure to asbestos, (see Schultz v. Keene

Corp., 729 F. Supp. 609 (N.D. Ill. 1990) (plaintiff can demonstrate

exposure to particular products through testimony of co-workers)),

a question arises as to whether asbestos played a role in causing

the lung cancer.  Therefore, we hold that an issue of fact

concerning medical causation had been presented which precluded

summary judgment.  We thus reverse the trial court's ruling on this

issue.

     2.  Product Identification / Asbestos Exposure

     The next issue is whether the evidence presented a triable

issue of fact as to whether Charles' lung cancer was caused by

exposure to certain defendants' products.

     It is essential to plaintiff's case that she establish that

Charles was exposed to an injury-causing, asbestos-containing

product which was manufactured or supplied by a particular

defendant.  Estate of Henderson v. W.R. Grace Company, 185 Ill.

App. 3d 523, 541 N.E.2d 805 (1989).  We must first determine what

test should be employed at the summary judgment stage to ascertain

whether plaintiff has met her burden with respect to product

exposure.  

     Plaintiff maintains that she does not carry any burden on

summary judgment.  Rather, she insists that it is the defendants'

burden to establish their right to judgment as a matter of law,

even in the absence of any evidentiary matter filed by plaintiff in

opposition to the motion for summary judgment.  While the

defendants do not deny that they must establish their right to

judgment as a matter of law, they contend that in order for the

plaintiff to defeat a motion for summary judgment, the plaintiff

must show exposure to a particular defendant's product.  

     In Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th

Cir. 1986), a case involving alleged asbestos exposure in a

shipyard, the court fashioned a rule which is referred to as the

"frequency, regularity and proximity" test.  This test was

specifically adopted by our Supreme Court in Thacker, 151 Ill. 2d

at 359, 603 N.E.2d at 457.  It requires that a plaintiff "show that

the injured worker was exposed to the defendant's asbestos through

proof that (1) he regularly worked in an area where the defendants

asbestos was frequently used and (2) the injured worker did, in

fact, work sufficiently close to this area so as to come into

contact with the defendant's product."  Thacker, 151 Ill. 2d at

359, 603 N.E.2d at 457. 

     Plaintiff, however, correctly points out that the Court in

Thacker did not apply this test at the summary judgment stage.  The

test was applied following a verdict when the issue concerned

whether a directed verdict or judgment notwithstanding the verdict

was mandated.  Plaintiff argues that it would be improper to apply

the "frequency, regularity and proximity" test at the summary

judgment stage.  However, we find Lohrmann to be instructive on

this point.  

     In Lohrmann, the court considered, among other things, a

district court's award of directed verdicts to three manufacturers

of asbestos products which were used in the plaintiff's workplace. 

At the close of the plaintiff's case, the trial court directed a

verdict in favor of the defendants, ruling that insufficient

evidence had been presented to show causation between the use of

the products and the plaintiff's asbestosis.  On appeal, the

plaintiff urged the court to adopt a rule which would allow a

plaintiff to present the issue of causation to a jury so long as he

could present any evidence that he was present at the workplace at

the same time as a defendant's asbestos-containing product.  The

court rejected this argument, concluding it would be contrary to

the law of substantial causation, especially when considering the

size of the plaintiff's workplace.  Lohrmann, 782 F.2d at 1162.   

     The court then looked to the district court's application of

the "frequency, regularity and proximity" test employed by the

district judge at the summary judgment stage.  The court concluded,

in dicta, that such an application of the test would have a de

minimus effect because it simply requires a plaintiff to prove more

than minimum contact.  It reasoned that such a requirement would be

reasonable considering the length of time needed for asbestosis to

develop.  Without proof of such exposure, a reasonable inference of

substantial causation cannot be made.  Lohrmann, 782 F.2d at 1162-

63.  We agree.  

     To allow plaintiff to present her case to the jury based on

mere allegations would be inconsistent with the requirement of some

proof that the defendant's conduct caused the injury.  See

Restatement (Second) of Torts § 431, Comment (a) (1965).  Unless

there is sufficient evidence for the jury to reasonably conclude

that the defendant's conduct was a cause of the plaintiff's injury,

plaintiff cannot present the question of causation to the jury.  

Thacker, 151 Ill. 2d at 355, 603 N.E.2d at 455; see Blackston v.

Shook and Fletcher Insulation Co., 764 F.2d 1480 (11th Cir. 1985);

Schultz v. Keene Corp., 729 F. Supp. 609 (N.D. Ill. 1990) (by

showing that plaintiff worked "with or in close proximity" to

defendants asbestos product plaintiff can overcome motion for

summary judgment).  Plaintiff, therefore, has the burden of proving

more than just minimal contact with defendants asbestos product. 

We do not think this is too heavy a burden for plaintiff to bear. 

Such a result balances the plaintiff's difficulties in proving

product exposure with the defendant's right to be free from

liability based upon speculation and guesswork.  See Thacker, 151

Ill. 2d at 359, 603 N.E.2d at 457.

     Therefore, we hold that in order to survive a motion for

summary judgment on the issue of exposure to a defendant's asbestos

product, the plaintiff must put forth some evidence tending to show

that (1) the decedent regularly worked in an area where the

defendant's asbestos was frequently used and (2) the decedent

worked close enough to this area to come into contact with the

defendant's product.    

     Several of the defendants were granted summary judgment in

this case because the trial court found that there was no triable

issue of fact as to whether Charles was exposed to their products. 

We will discuss the proffered evidence concerning each defendant

individually.

               A.  Zoltek Corporation

     Zoltek president, Zsolst Rumy, testified in his deposition

that Zoltek sold asbestos products to Keystone.  This testimony is

supported by invoices, as well as the deposition testimony of

Charles Brown, who purchased products for Keystone during at least

some of the years Charles worked there.

     Zoltek's summary judgment motion, however, included no

supporting affidavits or other evidence.  The plaintiff argues that

the failure to attach supporting affidavits and documents permits

her to overcome a motion for summary judgment on the basis of her

well-pleaded facts.  She is in error, however, as the court may

look to the entire record to determine whether a triable issue of

fact does indeed exist.  Carruthers v. B.C. Christopher & Co., 57

Ill. 2d 376, 313 N.E.2d 457 (1974).  Moreover, defendant can obtain

summary judgment by simply establishing that plaintiff cannot prove

a necessary element of her case.  See Zimmer v. Celotex Corp., 192

Ill. App. 3d 1088, 549 N.E.2d 881 (1989) (citing Celotex Corp. v.

Catrett, 477 U.S. 317 (1986)).  

     In the present case there is no evidence indicating where in

the Keystone plant the Zoltek products were used.  Without such

evidence, plaintiff cannot establish even a minimum level of

contact and thus cannot meet the Thacker standard.  Therefore,

summary judgment was appropriate as to Zoltek.    

          B.  A.P. Green Industries, Inc.

     The plaintiff produced the deposition testimony of William

Hendershott, a brick mason who worked for Keystone for many of the

same years as Charles.  Hendershott testified that he often used a

product called Thermo-O-Flake from 1959 until it was renamed and

the asbestos was removed from the product in the 1980s.  Therm-O-

Flake was an A.P. Green product that contained asbestos. 

Hendershott testified that when he used the product he would mix it

in a concrete type mixer and clouds of dust would rise.  Moreover,

Hendershott testified that other employees could be exposed to the

dust if they were passing through the area.

     A.P. Green argues that insufficient evidence was put forth

regarding the particular asbestos-containing product used, the area

in which it was used, and the regularity of Charles' employment

within a zone reached by the fiber drift.  We disagree.  

     Hendershott's deposition testimony described how long he used

the materials and the fact that he used Therm-O-Flake with

regularity.  He also testified that its use created dust in the

very mill where Charles was employed.  Anyone who walked through

Hendershott's area would be exposed to the dust, and countless

others would be exposed to the particles drifting throughout the

mill.  We think that a triable issue of fact exists as to whether

Charles was sufficiently exposed to Therm-O-Flake to find

causation.  See Thacker, 151 Ill. 2d at 364-65, 603 N.E.2d at 459

(decedent was in sufficient proximity to asbestos due to fiber

drift even though product was processed in different part of

plant).  Therefore we reverse the trial court's judgment granting

A.P. Green summary judgment.    

          C.  Sager Glove Company

     Keystone purchased 200 pairs of asbestos gloves from Sager. 

Keystone's purchase order for the gloves states in longhand, "WM

Welding, Galv, Pat, + others."  The plaintiff claims that this

statement establishes that the gloves were used in the welding,

galvanizing, and patenting departments of the wire mill where

Charles worked.  Further, William Hendershott and James Todd

testified that the employees in the mill regularly used gloves

similar to those sold by Sager.  Although we do not think an

inference can be drawn from the purchase order alone, when viewed

in combination with the testimony of these employees, we think a

triable issue of fact exists as to whether the gloves caused or

contributed to Charles' cancer.  A jury could reasonably infer that

Charles came into contact with Sager's gloves on a regular basis. 

Therefore, the decision granting Sager summary judgment is

reversed.

          D.  Garlock, Inc.

     In an answer to an interrogatory, plaintiff stated that James

Riggenbaugh and Denny Brown could testify that Charles was exposed

to Garlock's asbestos containing products, such as Garlock

galvanizing pads and Garlock Packings.  James Riggenbaugh was not

deposed and we have found no testimony or affidavit of Denny Brown

in the record, but there is a Charles Brown who was deposed. 

Charles Brown testified however, that he did not know where any

Garlock products may have been used at Keystone.    

     Plaintiff argues that her interrogatory answer precludes

summary judgment.  However, Garlock correctly points out that the

answer would be inadmissible at trial and may not be considered at

the summary judgment stage.  See Abel v. General Motors Corp., 155

Ill. App. 3d 208, 507 N.E.2d 1369 (1987).  Plaintiff's answer to

the interrogatory is clearly inadmissible hearsay.  Therefore, the

answer is not evidence which could defeat Garlock's motion for

summary judgment, and the trial court properly granted Garlock's

motion.

          E.  A & M Insulation Company

     Evidence against A & M consists of records which establish

that it sold transite, an asbestos-containing product, to Keystone.

Although the documents reveal that transite was sold to the wire

mill between 1967 and 1971, this evidence does not support an

inference that the wire mill used it in a manner which would cause

asbestos exposure to Charles.  Without evidence that Charles

regularly worked in close proximity to the product, or that the

product emitted a dust of some type, plaintiff cannot succeed

against A & M Insulation.  Since there was no evidence to suggest

any dust was created or that the product was frequently and

regularly used in Charles' proximity, summary judgment in A & M's

favor was appropriate. 

          F.  Kaiser Aluminum & Chemical Corporation

     Plaintiff relies on the deposition testimony of several

employees who established that Kaiser firebrick was used at

Keystone.  One employee testified that he had observed Charles

handling Kaiser firebrick.  However, Kaiser provided an affidavit

of William Boyd, a Kaiser employee who claimed to have personal

knowledge of the composition of Kaiser products, wherein Boyd

stated that Kaiser's firebrick did not contain asbestos.  Plaintiff

did not put forth evidence to contest this affidavit.  Therefore,

because there is no evidence that Kaiser firebrick contained

asbestos or caused asbestos exposure at Keystone,  summary judgment

was properly awarded to Kaiser.

          G.  Dresser Industries, Inc.

     The evidence against Dresser consists of two affidavits.  The

first affidavit was not drafted for this case.  It was originally

filed in a previous case titled Costa v. Armstrong World

Industries, (Peoria County Circuit Court No. 88 L 239) by Ken

Mayberry, a Keystone employee.  Mayberry stated in his affidavit

that he worked at Keystone from 1952 until 1988.  He stated further

that several Harbison-Walker (a Dresser subsidiary) products were

sent to Keystone and that they were used in areas where the

decedent in Costa worked.  Nothing in the record, however,

indicates that Nick Costa worked in the same area as Charles. 

Additionally, Mayberry began working at Keystone earlier than

Charles, and there is no evidence suggesting when Costa worked

there.

     The second affidavit was from Nichol Jameson, a Harbison-

Walker employee.  Jameson's affidavit, however, merely reflects

that Dresser sold more products to Keystone than those originally

identified by Dresser.  Neither affidavit sheds any light on

potential asbestos exposure to Charles.  Hence, summary judgment

was properly awarded to Dresser.

                           SUCCESSOR LIABILITY 

     Finally, E.D. Bullard argues that it is wrongfully being sued

for the acts of a predecessor in interest and that the trial court

should have granted summary judgment in its favor on this basis as

well.  Bullard purchased the assets and liabilities of Standard

Industrial Products Company of Illinois (Standard) in 1979. 

Thereafter, Bullard operated under the name of Standard Industrial

Products Company.  

     Bullard claims that the plaintiff is attempting to hold it

liable for Standard's actions prior to the 1979 purchase and that

this is inappropriate under the doctrine of successor liability. 

Plaintiff insists, however, that she is not attempting to hold

Bullard liable for Standard's actions, but instead is attempting to

hold it liable for its own post-purchase actions.  We agree.  

     As plaintiff readily concedes, she may not seek damages from

Bullard for Standard's actions prior to the 1979 sale.  Hoppa v.

Schermerhorn, 295 Ill. App. 3d 61, 630 N.E.2d 1042 (1994). However,

she may assert a cause of action for any post-purchase asbestos

exposure.  Therefore, summary judgment was properly denied to

Bullard.  Any concern Bullard may have about jury confusion over

this issue may be avoided by filing the appropriate pre-trial

motions to limit the evidence to post-1979 occurrences.

     For the foregoing reasons, the judgment of the circuit court

of Peoria County is affirmed in part, reversed in part and remanded

for further proceedings consistent with this opinion.

     Affirmed in part, reversed in part and remanded.      

     LYTTON and McCUSKEY, JJ., concur.