FLORENCE GREWE, Plaintiff-Appellant, v. WEST WASHINGTON
COUNTY UNIT DISTRICT No. 10, Defendant-Appellee.

Fifth District   No. 5—98—0072

Opinion filed February 24, 1999.

Gregory L. Shevlin, of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellant.

Bill J. Milner, of Law Offices of Bill J. Milner, of Salem, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Plaintiff, Florence Grewe, filed an action against defendant, West Washington County Unit District No. 10, seeking compensation for injuries she sustained as a result of a fall on defendant's premises on May 22, 1995. The case was tried before a jury on October 30, 1997. At the close of all the evidence, the trial court granted defendant's motion for a directed verdict. Plaintiff appeals from this judgment and certain evidentiary rulings of the trial court.

The pertinent facts are as follows: On May 22, 1995, plaintiff Florence Grewe and her husband, Edward Grewe, went to Okawville High School to attend a spring concert put on by the junior and senior high school students. Defendant, West Washington County Unit District No. 10, owns and operates Okawville High School. The concert was open to the public, but there was an admission charge. The concert was held inside the gym. There is a lobby area outside the gym. The lobby is a rectangular shape and covers an area about 15 feet by 30 feet. Tickets were being sold at a table near the lobby entrance. Across from the table were two entrances to the gym. One entrance was on the north end of the lobby. The other was on the south end of the lobby. Along the wall between the entrances to the gym, there was a trophy case. There were Pepsi machines along the gym wall on each side of the trophy case.

After plaintiff and her husband bought tickets, they headed toward the north gym door. Plaintiff stated that she noticed that the north side was full and that she turned toward the south entrance. She walked across the lobby past the trophy case. She was walking parallel with and a few feet from the trophy case wall. As she passed the middle of the trophy case, her feet slipped out from under her. She fell to the floor, landing on her side and bottom. She did not look to

see whether she slipped on anything because she could not move. She had no idea what caused her feet to slip.

Edward Grewe testified that he was walking directly behind his wife. He tripped over her and landed on his hands and knees very close to where his wife was lying. Mr. Grewe noted that he had a small round spot on the knee of his right pant leg that was gray in color. He said that it was not sticky. It was "more like slick," but not wet. He did not tell the superintendent about finding this spot. Mr. Grewe stated that he did not notice any water or debris on the floor in the immediate vicinity.

Plaintiff was transported by ambulance to the hospital. She sustained a fracture to her right hip, which required a surgical hip replacement. She also sustained a fracture dislocation to her wrist, which required alignment by traction, manipulation, and a long arm cast.

Debra Lynn Barkau testified that she and her family attended the concert. They arrived some 20 to 30 minutes early because she wanted to get specific seating so that she could videotape her daughter's performance. After entering the lobby, she and her five-year-old son walked toward the south entrance to the gym. She stated that she slipped in the lobby. She was near the middle of the trophy case. She estimated that she was 8 or 10 feet out from the trophy case wall when she slipped.

Ms. Barkau testified that, after she slipped, she was approached by one of the school district employees who had been handing out programs. Ms. Barkau stated, "[The employee indicated that] I should be careful, or leery, because the floor was slick, and there had been another person slip before me." This incident occurred before plaintiff fell. Ms. Barkau testified that she looked but did not see anything on the floor or on her shoe. Dennis Fancher, the superintendent of schools for the West Washington County Unit District No. 10, also attended this concert. He arrived before plaintiff slipped and fell. When Mr. Fancher arrived at the concert, he was advised that at least one person had slipped in the lobby area. Mr. Fancher testified that he did not ask anyone to show him the specific part of the lobby where the patron had slipped. He got down on one knee and surveyed the floor in the lobby but saw nothing on the floor. He also slid his feet back and forth across the floor by the trophy cases to see if he could detect anything not readily visible to the eye. He felt nothing out of the ordinary.

Mr. Fancher testified that he took no action because he did not find anything. He stated that, if he had found something, he could have placed warning cones to block off the area or required a worker to stand there until the area was cleaned. Mr. Fancher described the

shoes he was wearing that evening. The shoes had leather soles with a rubber insert in the middle. He admitted that these were not the best shoes to use to determine if there was something on the floor, because of the rubber insert. He also admitted that he could have missed something on the floor. After plaintiff's fall, Mr. Fancher inspected the area in the same manner. He said that he found nothing on the floor.

Lawrence Lange and Maxine Stine were school custodians. They worked at Okawville's gym that day. The custodians testified that the lobby floor had not been waxed since last summer. Both custodians testified the same dust mop is used to clean the gym floor and the lobby floor. Mr. Lange stated that he did not mop the gym floor because it had been done the night before. He dry-mopped the lobby with a dust mop. Mr. Lange stated that he sometimes uses an "Endust" type of product to dry-mop the gym floor. He does not use it every day. He does not use this product on the lobby floor.

At the close of all of the evidence, defendant renewed its motion for a directed verdict. After considering the arguments of counsel, the court entered an order granting the motion for a directed verdict. In its written order, the court stated in part as follows:

> "Although plaintiff argues that the earlier 'slips' accompanied by the evidence of a spot on Mr. Grewe's pants is sufficient circumstantial evidence to establish [that] a foreign substance must have been on the floor, the court cannot make this leap in view of all of the direct testimony and evidence from everyone, including plaintiff and her husband, that they saw no foreign substance on the floor, even though defendant's agent closely and adequately inspected the premises for such foreign substances before and after the fall. While defendant had notice of the prior slip, it had no notice of any dangerous condition or foreign substance on the floor."

> "In summary, the evidence wholly fails to support plaintiff[']s claims and her burden of proof on the issues raised by her that defendant failed to adequately inspect the floor after being advised of the earlier slip or that defendant failed to remove any foreign substance from the floor. Without proof that a foreign substance was a proximate cause of her fall, plaintiff has failed to establish a necessary element of her case."

The first issue in this case presents a question as to the circumstances under which the trial court may determine that the proof presents no factual questions for the jury's determination and that a verdict should be directed for the defendant. The propriety of a directed verdict must be judged according to the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967), and reaffirmed in *Maple v. Gustafson*, 151 Ill. 2d 445, 603 N.E.2d 508 (1992).

■ A directed verdict is properly entered in those limited cases where "all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand," *Pedrick*, 37 Ill. 2d at 510. In ruling on a motion for a directed verdict, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather, it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion. The court has no right to enter a directed verdict if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute or where the assessment of the credibility of witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Maple*, 151 Ill. 2d at 453-54.

In reviewing the evidence, a trial court cannot ignore circumstantial evidence or reasonable inferences of negligence that can be drawn from circumstantial evidence. *Koenig v. National Supermarkets, Inc.*, 231 Ill. App. 3d 665, 670, 596 N.E.2d 1329, 1334 (1992). Moreover, circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion; instead, circumstantial evidence will suffice whenever an inference may reasonably be drawn therefrom. *Staten v. Pamida, Inc.*, 189 Ill. App. 3d 125, 544 N.E.2d 1325 (1989).

In her amended complaint, plaintiff alleged that defendant had actual and/or constructive notice of the slippery nature of the floor and/or the foreign substance on the floor in the area where plaintiff slipped and fell. Plaintiff further alleged that the defendant was negligent in (a) failing to adequately inspect the floor, (b) failing to warn persons, including plaintiff, of the slippery nature of the floor, or (c) failing to remove a foreign substance from the floor.

■ In a premises liability action, the general rule is that liability will be imposed where a business invitee, such as plaintiff herein, is injured by slipping on a substance on the premises if (1) the substance was placed there by the negligence of the proprietor or (2) the defendant knew of its presence or the substance was there a sufficient length of time so that the proprietor had constructive notice of it. Once notice has been given, the obligation is to either correct the dangerous condition or give persons rightfully on the premises sufficient warning to enable them to avoid harm. *Perminas v. Montgomery Ward & Co.*, 60 Ill. 2d 469, 328 N.E.2d 290 (1975).

In this case, the trial court granted a directed verdict for defendant, finding that even though defendant had notice of the prior slip, it had no notice of any dangerous condition or foreign substance on the floor. In its order, the trial court apparently felt that the prior

incidents did not constitute evidence of a dangerous condition. We disagree.

■ It is well settled that evidence of prior accidents, occurring at the same place or with the same instrumentality, is admissible as tending to show that the common cause of such accidents was a dangerous and unsafe condition, and the frequency of such accidents also tends to raise the presumption of knowledge on the part of the offending parties. *City of Bloomington v. Legg*, 151 Ill. 9, 14, 37 N.E. 696 (1894); *City of Chicago v. Jarvis*, 226 Ill. 614, 617, 80 N.E. 1079 (1907); *Ray v. Cock Robin, Inc.*, 57 Ill. 2d 19, 22, 310 N.E.2d 9, 11 (1974). Such evidence is not admissible for purposes of showing independent acts of negligence. *City of Bloomington*, 151 Ill. at 14.

Here, plaintiff presented evidence that two other patrons had slipped in the same area of the lobby in which plaintiff slipped and fell. Plaintiff also presented evidence that these prior incidents occurred within about an hour prior to plaintiff's fall. Prior to plaintiff's fall, Mr. Fancher was told that a patron had slipped in the lobby. He performed an inspection but did not ask anyone to show him the specific area in the lobby where the patron slipped. His inspection consisted of getting down on one knee and looking over the lobby floor for water or foreign debris and sliding his feet across the area near the trophy case. He said that he detected nothing unusual. Mr. Fancher admitted that his shoes were not the best for detecting slippery conditions. He admitted that he could have missed something.

Maintenance personnel used the same dust mop to dry-mop the floors of the gym and lobby. Occasionally, they used an "Endust" type of product when dry mopping the gym floor. Plaintiff specifically stated that she felt that her feet slipped out from under her in the same area as the other patron had slipped.

Based upon this evidence, a jury could reasonably infer that a slippery area of the floor was the common cause for all three incidents. The jury could have inferred that the slippery floor was a dangerous condition. The jury could have found that Mr. Fancher's inspection was inadequate and unreasonable and that he did not exercise ordinary care under the circumstances.

The evidence of the prior incidents gave rise to the possibility that plaintiff's fall was foreseeable and that defendant had sufficient notice of a dangerous condition on the lobby floor. The evidence regarding prior incidents supports plaintiff's allegation that this area of the lobby floor presented a dangerous condition. Given this evidence, the jury could have found that plaintiff slipped and fell because this area of the lobby floor was slippery. The jury could have also concluded that the slippery floor represented a dangerous condition to the patrons

who walked on it and that such condition caused this accident. See *City of Bloomington*, 151 Ill. at 14; *Wright v. Stech*, 7 Ill. App. 3d 1068, 288 N.E.2d 648 (1972).

■ The trial court abused its discretion in finding that defendant had no notice that the lobby floor presented a dangerous condition. In its order, the trial court weighed the evidence and decided issues of credibility, thereby invading the province of the jury. Whether the slippery floor was a dangerous condition, whether the maintenance practices created the dangerous condition, whether this dangerous condition was a proximate cause of plaintiff's fall, and whether Mr. Fancher's inspection of the floor was reasonable were questions for the jury. When the evidence in this case is viewed in a light most favorable to plaintiff, we find that there are issues of credibility and factual disputes regarding essential elements of the case which the jury should have been permitted to resolve.

This is not a case where the plaintiff must prove that the defendant had actual or constructive notice of the dangerous condition by offering evidence regarding the appearance of the foreign object to prove that it had been on the floor for a reasonable length of time and should have been discovered. *Wroblewski v. Hillman's, Inc.*, 43 Ill. App. 2d 246, 193 N.E.2d 470 (1963); *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 148 N.E.2d 434 (1958). Here, the superintendent had actual notice that at least one patron had slipped 20 minutes prior to plaintiff's fall. Therefore, it was not necessary for plaintiff to introduce a graphic description of a foreign object.

Further, we find *Vance v. Lucky Stores, Inc.*, 134 Ill. App. 3d 166, 480 N.E.2d 167 (1985), to be distinguishable on its facts. In *Vance*, the plaintiff fell while shopping. Neither the plaintiff nor any other party was able to say what caused the plaintiff to fall. There was no evidence of prior accidents, such as there is in the case at bar. Nor was there any evidence that the condition of the floor rendered it dangerous. Similarly, in *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 416 N.E.2d 328 (1981), the plaintiff did not know why she fell, and there was no evidence of prior accidents giving rise to evidence of a dangerous condition.

Based upon direct and circumstantial evidence and reasonable inferences therefrom, a jury could have found that defendant was negligent in creating the dangerous condition and/or in failing to properly inspect and warn about the dangerous condition and that this condition was a proximate cause of the plaintiff's fall. It was the responsibility of the jury, not the judge, to weigh the contradictory testimony, to determine credibility, and to decide whether the inspection was adequate and the lack of action by the superintendent was

reasonable. Here, the court, in violation of the *Pedrick* standard, decided issues of credibility and weighed the evidence. The court should have permitted the case to go to the jury for a resolution of the conflicting testimony.

Taking the evidence in a light most favorable to plaintiff, we cannot say that she failed to make a submissible case. The evidence in this case is not such that a verdict for plaintiff could never stand. Therefore, the trial court abused its discretion in granting a direct verdict for defendant.

Because the case will be remanded to the circuit court for retrial, we will briefly address the evidentiary rulings as these issues may be raised during a retrial of the case.

■ Plaintiff first alleges that the trial court erred in admitting evidence regarding the school district's prior habits of carefulness. Defendant counters that Illinois courts have adopted Rule 406 of the Federal Rules of Evidence (Fed. R. Evid. 406), which allows evidence of habit to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit and routine practice.

Generally, we give deference to the rulings of the trial court on the admissibility of the evidence and reverse only if we find an abuse of that discretion. *Cochran v. Great Atlantic & Pacific Tea Co.*, 203 Ill. App. 3d 935, 561 N.E.2d 229 (1990). We need not decide today whether the admission of this habit evidence constituted error requiring a new trial as we have already reversed on other grounds. However, we would remind the parties that there are differences between evidence of custom and practice and evidence of habit.

A habit may be defined as a settled way of doing a particular thing. *Chicago Rock Island & Pacific R.R. Co. v. Bell*, 70 Ill. 102 (1873). Habit evidence is a description of a person's regular response to a repeated specific situation so that doing the habitual act becomes semiautomatic. M. Graham, Cleary & Graham's Handbook of Illinois Evidence, § 406.1 (6th ed. 1994).

The longstanding rule in Illinois is that where there are competent eyewitnesses who observed the incident and can relate enough circumstances of the accident, habit evidence becomes unnecessary and should not be admitted. *Plank v. Holman*, 46 Ill. 2d 465, 264 N.E.2d 12 (1970).

Defendant raised an issue regarding the applicability of Federal Rule of Evidence 406 in its brief. Relying on *Bradfield v. Illinois Central Gulf R.R. Co.*, defendant maintains that Illinois has adopted Federal Rule of Evidence 406 and that therefore evidence of habit is admissible even though eyewitness testimony is available. See *Bradfield v. Illinois Central Gulf R.R. Co.*, 137 Ill. App. 3d 19, 484 N.E.2d

365 (1985), *aff'd on other grounds*, 115 Ill. 2d 471, 505 N.E.2d 331 (1987).

The Illinois Supreme Court refused to address whether Illinois should adopt Federal Rule of Evidence 406 because the issue had not been preserved for review. *Bradfield* was affirmed on other grounds. *Bradfield*, 115 Ill. 2d at 474, 505 N.E.2d at 333. Therefore, *Plank* remains the law on this issue in Illinois. *Plank v. Holman*, 46 Ill. 2d 465, 264 N.E.2d 12 (1970); *Cairns v. Hansen*, 170 Ill. App. 3d 505, 524 N.E.2d 939 (1988).

In order for habit evidence to be admitted, a party must lay an adequate foundation to show that the habitual conduct has become semiautomatic and invariably regular. If the testimony is too vague, general, and ambiguous to establish a habit, it should not be allowed.

The routine practice of an organization differs conceptually from habit. The operation of an organization depends to a large extent upon establishing and following routines. Therefore, evidence of a routine practice of an organization is admissible as tending to prove that it was followed on the occasion in question. Evidence of a routine practice of an organization is established by what in effect is opinion testimony of a person with personal knowledge or by the introduction of specific instances of conduct sufficient in number to support a finding of routine practice. M. Graham, Cleary & Graham's Handbook of Illinois Evidence, § 406.4 (6th ed. 1994).

Prior to the retrial of this matter, we would encourage both parties to reexamine the evidence in view of the distinctions between habit evidence and custom-and-practice evidence.

In her final point, the plaintiff alleges that the trial court erred in refusing to admit evidence that Mr. Fancher cordoned off the area after plaintiff's fall. Plaintiff argues that this information was admissible to impeach Mr. Fancher and that during Mr. Fancher's direct examination defendant opened up the door with evidence of habit. Plaintiff also argues that because defendant denied that there was any condition to remedy, defendant's postaccident actions should not be excluded under the subsequent-remedial-measure rule. Defendant claimed that it was improper to admit evidence of subsequent remedial measures. The trial court sustained the objection.

As a general rule, evidence of subsequent remedial measures is not admissible as proof of defendant's negligence. This rule has been established because " 'later carefulness does not imply prior negligence' " and because the " 'correction of unsafe conditions should not be deterred by the possibility that such an act will constitute an admission of negligence.' " *Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 14, 541 N.E.2d 643 (1989), quoting *Lundy v.*

*Whiting Corp.*, 93 Ill. App. 3d 244, 252, 417 N.E.2d 154 (1981). Evidence of subsequent remedial measures may be introduced to prove ownership, the feasibility of precautionary measures, or for impeachment. *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.*, 217 Ill. App. 3d 94, 576 N.E.2d 918 (1991).

Illinois has long recognized that evidence of subsequent remedial measures may be used for impeachment purposes. *City of Taylorville v. Stafford*, 196 Ill. 288, 63 N.E. 624 (1902). However, guidelines for determining when the impeachment exception should apply were only recently articulated in *Herzog v. Lexington Township*, 167 Ill. 2d 288, 657 N.E.2d 926 (1995). "Just as evidence of subsequent remedial measures is not considered sufficiently probative to be admissible to prove prior negligence, that evidence is not admissible for impeachment where the sole value of the impeachment rests on the same impermissible inference of prior negligence." *Herzog*, 167 Ill. 2d at 301-02.

The court stated, "[W]here the impeachment value rests on inferences other than prior negligence, such evidence may be admitted where its probative value outweighs the prejudice." *Herzog*, 167 Ill. 2d at 302. The court also stated that where the defendant goes beyond stating that the original condition was adequate or safe and the defendant attempts to make exaggerated claims regarding safety, then evidence of subsequent conduct inconsistent with those claims is admissible. In those situations, evidence of the subsequent remedial measure is directly impeaching of the claim without an inference of negligence. *Herzog*, 167 Ill. 2d at 303.

The determination of the admissibility of evidence is a matter of the trial court's discretion and should not be reversed absent an abuse of that discretion. *Skelton v. Chicago Transit Authority*, 214 Ill. App. 3d 554, 573 N.E.2d 1315 (1991). Here, the record reveals that Mr. Fancher repeatedly stated that he conducted an adequate inspection and that had he found anything he would have placed warning cones in the area or stationed a person to warn patrons. While the repetitious nature of testimony borders on exaggeration, the trial court was in the best position to evaluate this testimony in light of the demeanor and attitude of this witness while testifying. On a cold record, we cannot say that the trial court abused its discretion in excluding this evidence.

However, we caution the parties that should Mr. Fancher exaggerate or overstate his claims regarding the safety of the lobby floor, the adequacy of his inspection, or his certainty of the results of his inspection, plaintiff should be allowed to offer proof of remedial measures to impeach the witness. *Herzog*, 167 Ill. 2d 288, 657 N.E.2d 926. Further,

if upon retrial defendant opens the door to this evidence, we are confident that the trial court will permit its introduction.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

HOPKINS and KUEHN, JJ., concur.