12 May 2000

No.  3--99--0144

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2000

VENETTA KAY JOHNSON, )  Appeal from the Circuit Court

Individually, and as Special )  of the 10th Judicial Circuit,

Administrator of the Estate )  Peoria County, Illinois,

of Charles E. Johnson, )

Deceased, )

)

Plaintiff-Appellant, )

)

vs. )  No. 93--L--544

)

OWENS-CORNING FIBERGLAS )  

CORPORATION, A. P. GREEN )

INDUSTRIES, INC., and )

SPRINKMANN SONS CORPORATION )

OF ILLINOIS, )  Honorable

)  Rebecca Steenrod,

Defendants-Appellees. )  Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Plaintiff, Venetta Kay Johnson, filed a complaint against numerous defendants alleging that her husband, Charles Johnson, died as the result of exposure to various products that contain asbestos.  The trial court entered summary judgment in favor of all defendants.  T
his court affirmed the judgment with respect to some defendants, but reversed with respect to others.  
Johnson v. Owens-Corning Fiberglass Corporation
, 284 Ill. App. 3d 669, 672 N.E.2d 885 (1996)
.  On remand, the trial court directed a verdict in favor of defendants Owens-Corning Fiberglas Corporation (OCF) and Sprinkmann Sons Corporation of Illinois (Sprinkmann).  A jury returned a verdict in favor of defendant A.P. Green Industries, Inc. (APG).  On appeal, plaintiff contends, 
inter
 
alia
, that the trial court erred: (1) by directing a verdict in favor of OCF and Sprinkmann; and (2) by giving the jury certain special interrogatories requested by APG.  For the reasons that follow, we reverse the trial court’s judgment with respect to all three defendants and remand for further proceedings.

At the outset, we note that plaintiff raises other issues on appeal in addition to those already stated.  However, due to the disposition of the aforesaid claims of error, we decline to address these other issues as their resolution is unnecessary and they are unlikely to arise again on remand.

Charles Johnson worked for Keystone Steel & Wire Company (Keystone) at its plant in Bartonville, Illinois, from 1955 until 1991, when he was diagnosed with lung cancer.  Johnson died in October 1991.

The Keystone plant is roughly one mile long and consists of a steel mill, a wire mill, and a mid-mill area that connects the steel and wire mills.  The wire mill is approximately one-half to three-quarters of a mile long.  Until the early 1980s, Johnson worked in the patenting department located on the wire-mill side of the plant.  The patenting department is adjacent to the drawing and galvanizing departments.  From the early 1980s until 1991, Johnson worked in the nail mill which is also on the wire-

mill side and adjacent to the galvanizing department.  Doorways approximately 15 feet high and 20 feet wide separate the various departments.  There are overhead doors, but these are only rarely closed.

During Johnson’s tenure, Keystone used various materials to insulate its pipes and furnaces.  Among other materials, Keystone purchased Kaylo, an insulator manufactured by OCF and distributed by Sprinkmann.  Kaylo was 85% calcium silicate and 15% asbestos until 1972, when all asbestos was removed from the product.  Kaylo’s primary intended use was external pipe insulation.  Kaylo was a dry flaky material that emitted substantial amounts of dust when removed from its packaging and anytime it was cut or rasped in order to fit around pipes.

Keystone also purchased Therm-O-Flake, an insulator manufactured by APG.  Therm-O-Flake was a powdery material that had to be mixed with water before application.  It was 18% asbestos.  Keystone’s brick masons used Therm-O-Flake to insulate the Keystone plant’s furnaces.

At trial, David Schwartz, a physician, testified as an expert witness on behalf of plaintiff.  Schwartz testified that asbestos fibers can remain airborne for as long as a month even in undisturbed air.  Moreover, asbestos fibers can travel as far as a mile from the point of release.

In addition, Schwartz opined that it is impossible to attribute the cause of any asbestos-related disease to any single asbestos fiber or any specific period of asbestos-fiber inhalation.  Rather, with respect to causation, the only conclusion that can be drawn is that every exposure to asbestos substantially increases the risk of developing an asbestos-

related disease, including lung cancer.

Harold Molchin, a Sprinkmann insulator, testified that he installed Kaylo while employed by Sprinkmann.  Molchin recalled that Kaylo emitted dust whenever it was cut or rasped.  Molchin further testified that he installed insulation at Keystone on three occasions:  the first in the 1970s; the second at an unspecified time; and the third during the late 1980s.  Molchin could not recall whether any of the installation jobs at Keystone involved Kaylo.

Wes Klein, a Sprinkmann truck driver, testified that he made “hundreds” of deliveries to Keystone between 1961 and 1981.  Klein estimated that he delivered Kaylo on approximately one-

third of these occasions.  Klein recalled making deliveries to the wire-mill, as well as the steel-mill, side of the Keystone plant.

Russ Wolstenholme, a Sprinkmann truck driver, testified that he made deliveries to Keystone between 1954 and 1990.  Although the frequency of the deliveries varied, there were times that Wolstenholme would deliver materials to Keystone as frequently as twice per week.  Wolstenholme made deliveries to the wire-mill and steel-mill sides of the Keystone plant.  Wolstenholme testified that he was “comfortable” in stating that Kaylo was among the products he delivered to Keystone.

Siegfried Schubert, a Keystone pipefitter, testified that he removed and installed pipe insulation at the Keystone plant between 1954 and 1974.  Schubert testified that he replaced insulation on the wire-mill side “many times.”  In particular, Schubert remembered replacing insulation in the patenting department, the nail mill, the galvanizing department, and the drawing department.  Schubert estimated that he spent most of his time on the wire-mill side and in the mid-mill area of the plant.  Schubert recalled seeing bags of Kaylo and reading labels that indicated Kaylo was 85% magnesium and 15% asbestos.

Schubert explained that, when replacing insulation, he usually cut the insulation on the ground in the immediate vicinity of the repair.  Schubert also noted that insulation would often fall to the ground while he was replacing the insulation on the many overhead pipes at the Keystone plant.

Ellis Carlton, a Sprinkmann materials purchaser, testified that, in addition to selling insulation, Sprinkmann sometimes installed insulation for its customers.  Carlton identified a group exhibit containing invoices showing that one Sprinkmann installer installed Kaylo at Keystone on at least five occasions in 1967, six occasions in 1969, and once in 1970.  Carlton admitted that there had been records of other installation jobs at Keystone, but these had been purged from Sprinkmann’s archives in 1983.  Carlton agreed that the materials listed in the surviving invoices were typical of the sort of materials used at installation jobs at the Keystone plant.

At the close of plaintiff’s case-in-chief, all defendants moved for directed verdict.  The trial court directed a verdict in favor of OCF and Sprinkmann.  The trial court denied APG’s motion.  The trial then proceeded with APG as the sole defendant.  The jury returned a verdict in favor of APG.

I.

Plaintiff asks this court to reverse the trial court’s order directing a verdict in favor of OCF and Sprinkmann.  Specifically, plaintiff maintains that, contrary to the trial court’s findings, the evidence presented in plaintiff’s case-in-

chief is such that a rational trier of fact could have found that Charles Johnson had been exposed to Kaylo.

A motion for directed verdict should be granted when, viewing all the evidence in the light most favorable to the nonmovant, the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 229 N.E.2d 504 (1967).  A trial court should only grant a motion for directed verdict where there is no evidence demonstrating a substantial factual dispute or where the assessment of the credibility of witnesses or the determination of conflicting evidence is not decisive to the outcome.  
Maple v. Gustafson
, 151 Ill. 2d 445, 603 N.E.2d 508 (1992).  In recognition that trial courts are not to weigh evidence, resolve conflicts in evidence, or assess the credibility of witnesses, a ruling on a motion for directed verdict is subject to 
de
 
novo
 review.  
Dunlap v. Alcuin Montessori School
, 298 Ill. App. 3d 329, 698 N.E.2d 574 (1998).

In a cause of action for negligence or strict products liability arising from alleged exposure to asbestos, a plaintiff must prove that the defendant’s asbestos was the cause in fact of the injury.  
Thacker v. UNR Industries, Inc.
, 151 Ill. 2d 343, 603 N.E.2d 449 (1992).
  To prove causation in fact, the plaintiff must prove medical causation, 
i.e.
, that exposure to asbestos caused the injury, and that it was the defendant’s asbestos-

containing product which caused the injury.  
Thacker
, 151 Ill. 2d 343, 603 N.E.2d 449.  With respect to the directed verdicts in the case at bar, only the latter burden is at issue.

To meet this burden, a plaintiff must show that the injured party was exposed to the defendant’s asbestos through proof that he regularly worked in an area where the defendant’s asbestos was frequently used and the injured party worked in sufficient proximity to this area so as to come into contact with the defendant’s product.  
Thacker
, 151 Ill. 2d 343, 603 N.E.2d 449.  This test is often referred to as the “frequency, regularity and proximity” or “substantial-factor” test.

In the case 
sub
 
judice
, plaintiff presented evidence that Kaylo emitted dust when installed to insulate pipes.  Plaintiff showed that Sprinkmann delivered Kaylo to Keystone, and the wire-mill side in particular, on numerous occasions from the late 1950s until the early 1970s.  Siegfried Schubert, a Keystone pipefitter, testified he recalled seeing bags of Kaylo at Keystone.  Schubert also recounted installing insulation with the same characteristics as Kaylo on the wire-mill side of the Keystone plant.  Plaintiff presented expert testimony that asbestos fibers may remain airborne for as much as a month, even in undisturbed air, and may travel as far as a mile from their source.  See 
Wehmeier v. UNR Industries, Inc.
, 213 Ill. App. 3d 6, 572 N.E.2d 320 (1991) (fiber-drift evidence may satisfy proximity prong of frequency, regularity, and proximity test).  Taken together and in the light most favorable to plaintiff, this evidence is sufficient to allow a rational trier of fact to find that Charles Johnson’s lung cancer was caused by exposure to Kaylo.  Accordingly, we must reverse the trial court’s judgment directing a verdict in favor of defendants OCF and Sprinkmann and remand plaintiff’s cause for a new trial.

II.

Plaintiff also contends that the trial court erred by giving the jury two special interrogatories requested by APG.  In APG’s Instruction No. 25B, the jury was asked the following question:

“Do you find that Charles Johnson’s lung cancer was caused, in whole or in part, by exposure to fibers from A. P. Green asbestos products used at Keystone?”

In APG’s Instruction No. 28C, the jury was asked:

“Did Charles Johnson regularly work in an area where A. P. Green’s asbestos-containing products were frequently used so as to be exposed to asbestos fibers from the defendant’s products?”

Section 2--1108 of the Code of Civil Procedure provides as follows:

“Unless the nature of the case requires otherwise, the jury shall render a general verdict.  The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing.  Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions.  Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law.  When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly.”  735 ILCS 5/2--1108 (West 1996).

Upon the request of a party, the trial court must give a special interrogatory so long as it is in proper form.  
Snyder v. Curran Township
, 281 Ill. App. 3d 56, 666 N.E.2d 818 (1996).  A special interrogatory is in proper form if it meets the following criteria: (1) it is a single question; (2) it relates to an ultimate issue of material fact, such that a response to the interrogatory would control an inconsistent general verdict returned by the jury; (3) its terms are simple, unambiguous, and understandable by the jury, so that the jury knows what it is deciding; and (4) it is not repetitive, confusing, or misleading.  
Snyder
, 281 Ill. App. 3d 56, 666 N.E.2d 818.  In determining whether a special interrogatory meets these criteria, a court should consider the language of the special interrogatory within the context of all of the jury instructions.  
Blakey v. Gilbane Building Corporation
, 303 Ill. App. 3d 872, 708 N.E.2d 1187 (1999).

Upon review of the jury instructions, we find that APG’s Instruction No. 25B is in proper form.  In addition to APG’s special interrogatories, the jury was instructed that a proximate cause “need not be the only cause, nor the last or nearest cause.”  Furthermore, the jury was instructed that “[m]ore than one person may be to blame for causing an injury.”  When APG’s Instruction No. 25B is read together with these instructions, it is clear that a rational jury would understand that exposure to APG’s product need not be the sole cause of Charles Johnson’s lung cancer in order to give an affirmative answer to the interrogatory.  Accordingly, the trial court committed no error in giving APG’s Instruction No. 25B.

However, we agree with plaintiff that APG’s Instruction No. 28C was not in proper form, should not have been given to the jury, and that giving this special interrogatory resulted in substantial prejudice to plaintiff.  APG’s Instruction No. 28C is another example of the disapproved practice of “culling passages from opinions and incorporating them into [jury] instructions” (
Costa v. Dresser Industries, Inc.
, 268 Ill. App. 3d 1, 12, 642 N.E.2d 898, 906 (1994)).  In particular, we agree with the Fourth District Appellate Court that grafting the frequency, regularity, and proximity test onto jury instructions is likely to confuse, rather than clarify, the concept of proximate cause.  See 
Spain v. Owens Corning Fiberglass Corporation
, 304 Ill. App. 3d 356, 710 N.E.2d 528 (1999).  We are mindful that the 
Spain
 court addressed the propriety of a jury instruction on proximate cause rather than a special interrogatory.  
Spain
, 304 Ill. App. 3d 356, 710 N.E.2d 528.  Nevertheless, we believe that the concern about juror confusion applies with equal, if not greater, force in the context of a special interrogatory.

Injecting the terms “frequently” and “regularly” into the jury’s deliberations without further explanation carries with it the danger that jurors may interpret their instructions to mean that a plaintiff must prove that he was exposed to a substantial number of the defendant’s asbestos fibers.  In actuality, the substantial-factor test is not concerned with the quantity of asbestos but its legal significance.  
Wehmeier v. UNR Industries, Inc.
, 213 Ill. App. 3d 6, 572 N.E.2d 320 (1991).  Where there is competent evidence that one or a 
de
 
minimus
 number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor causing a plaintiff’s injury.  
Wehmeier
, 213 Ill. App. 3d 6, 572 N.E.2d 320.

While the frequency, regularity, and proximity test may be a useful analytical tool for the courts, without explanation or context, it is a likely source of confusion and misapprehension for the jury.  Therefore, because we find that APG’s Instruction No. 28C is confusing and misleading, it is not in proper form and should not have been given to the jury.  Accordingly, we reverse the judgment in favor of APG and remand for a new trial.

For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BRESLIN and HOLDRIDGE, J.J., concur.