ANTONIO CARUSO *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. M&O INSULATION COMPANY, Defendant-Appellee and Cross-Appellant (Sprinkmann Sons Corporation of Illinois *et al.*, Defendants).

Fourth District  No. 4—03—0149

Opinion filed December 29, 2003.

Andrew J. Kelly (argued), of Walker & Wylder, Ltd., of Bloomington, for appellants.

John J. Kohnke and Paul E. Wojcicki (argued), both of Segal, McCambridge, Singer & Mahoney, Ltd., of Chicago, for appellee.

JUSTICE COOK delivered the opinion of the court:

The trial court, during a jury trial, entered a directed verdict for defendant at the close of plaintiffs' case. Plaintiffs appeal. We reverse and remand.

Plaintiff, Antonio Caruso, developed mesothelioma as a result of exposure to asbestos during his work at the City Water, Light and Power Plant (CWLP) in Springfield, Illinois. Plaintiff worked in CWLP's Dallman plant from 1950-52 and from 1955-93. On October 20, 2000, plaintiff brought this action against defendant, M&O Insulation Company (M&O), and other defendants.

M&O is a company that installs and sells insulation. M&O was incorporated in 1972 by Jack McNamara and Richard O'Heir. O'Heir testified in his deposition that M&O had never done insulation work anywhere in the Springfield area. In an affidavit dated January 11, 2002, O'Heir stated that "M&O has never performed any insulating work at the City Water, Light & Power Plant in Springfield, Illinois." Peter Castellarin, M&O's chief financial officer, testified in his deposition that M&O had not done work at CWLP or for the City of Springfield at any time. Castellarin began working for M&O in October 1976.

In a letter dated April 12, 2002, plaintiffs advised M&O they had obtained records from CWLP that showed M&O had done insulation work at CWLP. Castellarin testified that upon his review of the documents, "a big lightbulb went off. As soon as we saw [Dallman], we recognized it, went right back to the books, and did another search." Defendant's job books showed nine entries referencing "Dallman" in Springfield, Illinois. On May 21, 2002, less than two weeks before trial, M&O supplemented its prior discovery responses by admitting it had worked at CWLP and providing documents showing installation jobs and sales to CWLP as early as April 1975.

Castellarin testified that M&O never purchased, installed, or resold asbestos-containing insulation material, that it just happened the

company was started in 1972 after the use of asbestos-containing materials were banned. Castellarin recognized, however, that asbestos-containing insulation was sitting in suppliers' warehouses, and suppliers were selling it in 1972. O'Heir testified, "we were the luckiest guys in the world when we started. We just happened to start at a time when [asbestos insulation] was banned and we knew what the story was and we just never got involved in it, so it was never anything that came into practice." However, Melvin Corbeil, the former president of Brand Industries, another defendant, testified that asbestos-free products became available, "I'm going to say somewhere around 1973 or 4." He then conceded it could have been 1974-75, and on cross-examination admitted it could have been as early as 1970. Finally, Corbeil stated, "I'm telling you the best of my recollection was '73 to '74, you know, somewhere around that time."

O'Heir testified:

"[T]he word was on the street, it was all over every place that there was a problem with the asbestos and the products that we've been using for years, and when we were starting the company, we were starting fresh, we would use nothing that contained asbestos. If the boxes weren't marked, if the product wasn't marked, we never touched it, and that was every employee was told that, and it went on right down the line."

Castellarin testified that M&O installed insulation from April 1972 up through the present time. He testified that M&O purchased thermal insulation from Illinois Insulation Company and also directly from Owens-Corning. The products purchased were pipe covering and Kaylo block. Those products at one time contained asbestos. Castellarin testified M&O had no records showing what materials were used on jobs prior to 1995, that M&O had a policy of destroying records after seven years.

On June 3, 2002, the matter proceeded to trial on plaintiffs' negligence claims against M&O, Owens-Illinois, Inc., and Industrial Health Foundation, all other defendants having settled with the plaintiffs or having been dismissed from the case. On June 19, at the close of plaintiffs' case, the trial court directed a verdict in favor of each remaining defendant. As to M&O, the trial court stated, "the evidence just is not there [as to M&O]. There has been no evidence that [M&O] did buy, sell any asbestos." Plaintiffs appeal the trial court's decision to direct a verdict in M&O's favor and its decision to deny plaintiffs' motion for a new trial. We review *de novo* the grant of a directed verdict. *Evans v. Shannon*, 201 Ill. 2d 424, 427, 776 N.E.2d 1184, 1186 (2002); *City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 633, 668 N.E.2d 601, 604 (1996).

■ In a jury case, plaintiff must present at least some evidence on every element essential to his cause of action, and if he fails to do so, a directed verdict is appropriate. *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 458, 644 N.E.2d 831, 834 (1994). Even if the plaintiff produces some evidence, however, that evidence may lose its significance when viewed in the context of all of the evidence. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 504-05, 229 N.E.2d 504, 510 (1967). Where there is evidence on both sides, a motion for directed verdict may still be granted, but only where all the evidence viewed in a light most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict can ever stand. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.

■ A directed verdict is improper where "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512 (1992); *cf. Kokinis v. Kotrich*, 81 Ill. 2d 151, 155, 407 N.E.2d 43, 45 (1980) (procedure in a nonjury trial). In reviewing the evidence, a trial court cannot ignore circumstantial evidence or reasonable inferences of negligence that can be drawn from circumstantial evidence. *Grewe v. West Washington County Unit District No. 10*, 303 Ill. App. 3d 299, 303, 707 N.E.2d 739, 742 (1999). The use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion. Circumstantial evidence will suffice whenever an inference may reasonably be drawn therefrom, and the facts established by such inferences are considered when an issue is decided as a matter of law or a verdict is directed. *Mort v. Walker*, 98 Ill. 2d 391, 396-97, 457 N.E.2d 18, 21 (1983).

"While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 354, 603 N.E.2d 449, 454 (1992). In *Thacker*, the supreme court held that Manville Corporation was not entitled to a judgment *n.o.v.*, despite the relatively small amount of asbestos it supplied to the UNARCO plant, the large quantity of asbestos supplied from other sources, and decedent's testimony he did not work with the Manville asbestos. *Thacker*, 151 Ill. 2d at 353, 603 N.E.2d at 455. Plaintiff was able to escape a directed verdict, or judgment *n.o.v.*, by her "testimony, albeit slight, indicating that Manville asbestos necessarily generated dust which became part of dust which circulated throughout the facility." *Thacker*, 151 Ill. 2d at 364-65, 603 N.E.2d at 459.

Plaintiff here presented some evidence from which a reasonable jury could have concluded that M&O sold or installed products containing asbestos at the Dallman plant. Plaintiff presented evidence that he worked at a plant where asbestos was present and that as a result he contracted mesothelioma. Plaintiff presented evidence that M&O supplied materials to that plant, materials which were commonly known to contain asbestos. Again, a plaintiff may meet his or her burden of proving causation with circumstantial evidence; Illinois law does not require unequivocal or unqualified evidence of causation. *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 90-91, 767 N.E.2d 314, 331 (2002).

■ The evidence in this case did *not* overwhelmingly favor M&O, particularly when that evidence is viewed in the light most favorable to plaintiffs. M&O was unable to present definitive evidence, in the form of invoices or the like, that the materials it supplied to the Dallman plant were asbestos-free. We are forced to rely on the fallible testimony of witnesses. Corbeil, a witness adverse to plaintiff, testified to the best of his recollection that asbestos-free insulation did not become available until 1973 or 1974. The burden of establishing the contents of the products it supplied, facts peculiarly within the knowledge of M&O, should not be placed on plaintiff. *Snyder v. Ambrose*, 266 Ill. App. 3d 163, 166, 639 N.E.2d 639, 640-41 (1994). The mere denial that M&O used asbestos is not controlling. Positive direct testimony may be contradicted and discredited by adverse testimony, circumstantial evidence, discrepancies, omissions, or the inherent improbability of the testimony itself. *Baker v. Hutson*, 333 Ill. App. 3d 486, 493, 775 N.E.2d 631, 637 (2002).

■ Credibility issues are certainly present in this case. The fact that M&O claimed, until two weeks before trial, that it had never performed any insulating work for CWLP is significant. The jury would not have been required to accept M&O's explanation of innocent mistake. The jury could have concluded that M&O was engaging in intentional deception and that its statements regarding asbestos were also deceptions. At the very least the jury could have concluded that M&O's recollections, both as to where it worked and what products it dealt with, were simply inaccurate and entitled to little weight.

It is not correct that asbestos had been "banned" in 1972. An OSHA (Occupational Safety and Health Administration) standard, effective July 7, 1972, merely limited exposure to asbestos fibers and required a warning on asbestos products that "breathing asbestos dust may cause serious bodily harm." *ACandS, Inc. v. Godwin*, 340 Md. 334, 366 n.9, 667 A.2d 116, 131 n.9 (1995). That case noted "the Secretary of Labor's recognition in 1972 that, with proper precau-

tions, asbestos would not be a health hazard." *ACandS*, 340 Md. at 366, 667 A.2d at 131. According to the Secretary, " '[t]he dispute is as to the determination of a specific level below which exposure is safe.' " *ACandS*, 340 Md. at 366, 667 A.2d at 131. Owens-Corning did not stop manufacturing asbestos-containing Kaylo until 1972. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 116, 720 N.E.2d 242, 249 (1999). Asbestos-free Kaylo was certainly not available in 1970. Even after the manufacture of asbestos-free Kaylo began, it must have taken a period of time for those products to reach insulation companies.

Because plaintiff presented some evidence that M&O sold products containing asbestos, and because the assessment of credibility of the witnesses is decisive in this case, it was error to direct a verdict. Plaintiff further asks that we remand for a new trial on damages only, as a sanction against M&O for concealment of evidence. 166 Ill. 2d R. 219(c)(iii). However, we will leave the question of a Rule 219 violation to the consideration of the trial court on remand. In light of our ruling, we need not address M&O's cross-appeal seeking sanctions under Rule 137. 155 Ill. 2d R. 137.

Reversed and remanded.

KNECHT, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully disagree with the determination by the majority that because there was "some evidence that M&O sold products containing asbestos, and because the assessment of credibility of the witnesses is decisive in this case, it was error to direct a verdict." 345 Ill. App. 3d at 350.

The plaintiff has the burden of producing evidence sufficient to establish each element of his or her claim. *Thacker*, 151 Ill. 2d at 354, 603 N.E.2d at 454. This burden of production is met with regard to a given element of proof when there is some evidence which, when viewed most favorably to the plaintiff's position, would allow a reasonable trier of fact to conclude the element to be proved. *Thacker*, 151 Ill. 2d at 354, 603 N.E.2d at 454. While circumstantial evidence may be used to show causation, proof that relies upon mere conjecture or speculation is not sufficient. *Thacker*, 151 Ill. 2d at 354, 603 N.E.2d at 454. If the plaintiff fails to meet the burden of production with regard to a necessary element of the case, courts rightfully grant directed verdicts or enter judgment *n.o.v. Thacker*, 151 Ill. 2d at 354, 603 N.E.2d at 454-55.

The majority bases its decision on the following finding:

"Plaintiff here presented some evidence from which a reasonable jury could have concluded that M&O sold or installed products containing asbestos at the Dallman plant. Plaintiff presented evidence that he worked at a plant where asbestos was present and that as a result he contracted mesothelioma. Plaintiff presented evidence that M&O supplied materials to that plant, materials which were commonly known to contain asbestos." 345 Ill. App. 3d at 349.

Here, plaintiffs argued "the insulation M&O used in the early to mid-1970s contained asbestos." In support of their argument, plaintiffs stated: "Corbeil *** testified 'asbestos-free' products did not become available to the insulation industry until 1974 or 1975." The record shows Corbeil believed "asbestos-free products" became available "around 1973 or 4." Upon further inquiry, Corbeil acknowledged they could also have become available in 1970, or 1974, or 1975. Corbeil admitted the dates were approximations, noting, "it's a long time ago." The record showed defendant did not supply materials to Dallman until 1975 and did not begin work at the site until 1977.

Plaintiffs failed to provide "some evidence" that M&O sold products containing asbestos to the Dallman plant in Springfield, Illinois. Corbeil's testimony as to when asbestos-free products became available was speculative and thus not sufficient.

Further, Richard O'Heir did not form M&O until 1972 and he testified M&O did not use asbestos-containing materials. Cf. *Johnson v. Owens-Corning Fiberglas Corp.*, 313 Ill. App. 3d 230, 233, 729 N.E.2d 883, 885 (2000) (all asbestos removed from Kaylo in 1972); *McClure*, 188 Ill. 2d at 116, 720 N.E.2d at 249 (after 1972, Owens-Corning did not manufacture asbestos-containing Kaylo); *Kochan v. Owens-Corning Fiberglas Corp.*, 242 Ill. App. 3d 781, 786, 610 N.E.2d 683, 686 (1993) (Owens-Corning ceased making Kaylo in 1972).

Plaintiffs must present evidence that defendant used materials containing asbestos in its product and that that product was used by defendant in CWLP's Dallman plant. Plaintiffs failed to meet their burden with regard to the necessary elements of the case, and the trial court rightfully granted a directed verdict.

The trial court's decision should be affirmed.